*Windham, July, 1849.*

Weeks
*v.*
Connecticut & Rhode-Island Turnpike Co.

---◆---

## BILLINGS *against* THE TOLLAND COUNTY MUTUAL FIRE INSURANCE COMPANY.

Where in a policy of insurance on sundry buildings, they were described as barns, to which this clause was added—"all the above described barns are used for hay, straw, grain unthreshed, stabling and shelter;" and on the trial, after proof of a loss by fire, it appeared, that on the day preceding the night of the fire, the insured had caused about two bushels of lime and six or eight pails of water to be placed in a tub standing in a room generally used for keeping therein unthreshed corn, in one of the barns, for the purpose of preparing the lime for rolling in it some wheat, which he was about to sow upon his farm; that a short time previous to the fire, he had commenced the painting of his house, and his painter had mixed his paints in the same room, and at the time of the fire, there were in it an oil barrel, containing about a gallon of oil, a keg of white lead and a pot with about a pint of mixed paint; that in another building, described in the policy as used in part for a cider-mill, the insured, before and after the execution of the policy, had been in the habit of repairing his farming utensils, and had also made in it a bee-hive, and planed some boards for a room in his house; but a day or two before the fire, the building had been cleared out, leaving nothing in it but some apples: held, 1. that the clause relating to the use of the buildings insured, was not a warranty that they should be used in that manner, and in no other, but was inserted merely for the purpose of designating the buildings insured, and not to limit their use, or to deprive the insured of the enjoyment of his property in the same manner as buildings of that description are generally used and enjoyed; 2. that the acts of the insured, so far as

*Tolland*,
July, 1849.

Billings
*v.*
Tolland Co.
Mutual Fire
Ins. Company.

they were, or could have been, the cause of the loss, were in accordance with the ordinary use of such buildings by farmers.

Therefore, where the court, on the trial of the cause, instructed the jury, that if the buildings insured were, in the ordinary acceptation of the terms, of the description stated in the policy, and continued such to the time of the fire, and were only put to the ordinary use of such buildings, the policy remained in force; but that the insured had no right to change the nature and use of the buildings, and if he did, he would lose the benefit of the policy—that a single act or so, which did not belong to the ordinary and appropriate use of the buildings, would not change their nature and character, and would not vacate the policy, or prevent a recovery thereon, unless such acts were fraudulent, or grossly careless, and if grossly careless, were the cause of the loss—and the jury found for the plaintiff; it was held, that the defendants were not entitled to a new trial for a misdirection.

THIS was an action on a policy of insurance against fire, upon the plaintiff's dwelling-house, several barns and other buildings.

The cause was tried before the superior court in the county of *Tolland*, at the *October* term, 1848. In the policy, one of the barns was described as a building "used for a barn, cider-mill," &c. and after a more particular description of the buildings, the following clause was added : " All the above described barns are used for hay, straw, grain unthreshed, stabling and shelter, including the one used in part as a barn, and in part as a cider and threshing mill."

Upon trial of the cause before the jury, it was proved, that on the day preceding the night of the fire, when the barns were burnt, the plaintiff had caused about two bushels of lime, and six or eight pails of water, to be placed in a half-hogshead tub, standing in a room generally used for keeping therein unthreshed corn, in one of the barns, called the *North* barn, for the purpose of preparing the lime for rolling in it some wheat, which he was about to sow upon his farm. A short time previous to the fire, he had commenced painting his house, and his painter had mixed his paints in the same room ; and at the time of the fire, there were in it an oil barrel, containing about a gallon of oil, a keg of white lead, and a pot with about a pint of mixed paint.

With respect to another building, called the *South* barn, and described in the policy, as used in part for a cider-mill, it was proved, that before and subsequent to the execution of the policy, the plaintiff had been in the habit of repairing in it his farming utensils, such as sleds and ox-yokes ; that on

*Tolland,*
July, 1849.

Billings
*v.*
Tolland Co.
Mutual Fire
Ins. Company

one occasion, after the execution of the policy, he had made in it a bee-hive, and some doors for the cellar of his dwelling-house ; and had also caused some boards to be planed in it, for a floor to one room of his house. But a day or two before the fire, the building had been cleared out, and nothing was left in it, except some apples. In other respects, the buildings had been used in the manner specified in the policy.

Upon these facts the defendants claimed, that the warranties in the policy were broken ; and that the policy, at the time of the fire, had become inoperative ; and requested the court so to charge the jury.

But the court instructed them, that the *North* barn was insured as a barn, and the *South* one as a barn and cidermill ; and that if they respectively continued such, to the time of the fire, and were only put to the common and ordinary use of such buildings, the policy remained in force : that the words, "barn" and "cider-mill," were to be taken in their ordinary acceptation, and as such the plaintiff had a right to use the buildings, but had no right to change their nature and use ; and if he did, he would lose the benefit of the policy : that a single act or so, which did not belong to the ordinary, common and appropriate use of the buildings, would not change their nature and character, and would not vacate the policy or prevent a recovery, unless such acts were fraudulent, or grossly careless, and if grossly careless, were the cause of the loss.

The jury returned their verdict in favour of the plaintiff ; and the defendants filed a motion for a new trial, which was reserved for the advice of this court.

The case was argued, at the meeting of the judges in *Hartford*, in *November*, 1849, by *Brockway* and *Waldo*, in support of the motion, and by *T. C. Perkins* and *L. F. Robinson*, contra.

The counsel for the defendants contended, 1. That the construction of the contract embraced by the policy in question, was to be governed by the rules of law applicable to other contracts. We are to ascertain the intention of the parties from the language they have used, in the light of

*Tolland,*
July, 1849.

Billings
*v.*
Tolland Co.
Mutual Fire
Ins. Company.

the concomitant circumstances.   *Cross* v. *Sutliffe*, 2 *Bay*, 220. 223.

2. That the words in this policy, " All the above barns are used for grain unthrashed, hay, stabling and shelter, including the one used in part as a barn and in part as a cider and threshing mill"—are a *warranty* that these buildings should be used in this manner, and, for the purposes of insurance, in this manner only.   *Wood* v. *The Hartford Fire Insurance Company,* 13 *Conn. R.* 533. 554.   *Jennings* v. *The Chenango County Mutual Insurance Company,* 2 *Denio.* 75.   These words, used by the plaintiff in his proposal, and incorporated into the policy, relate to the *risk.*   The charge recognizes this position so far as the *identity* of the buildings is concerned, but is silent as to their *use.*

3. That these words being a warranty that the buildings should be used in a particular manner, any other use would preclude the plaintiff from a recovery on the policy.   See the cases above cited.   *French* v. *The Chenango Mutual Insurance Company,* 7 *Hill,* 122.   *Lounsbury* v. *The Protection Insurance Company,* 8 *Conn. R.* 459. and *Duncan* v. *The Sun Fire Insurance Company,* 6 *Wend.* 488. were also referred to and commented upon.   Even *negligence* in the insured will discharge the underwriters.   *Cleveland* v. *The Union Insurance Company,* 8 *Mass. R.* 308. 325. *Law* v. *Hollingsworth,* 7 *Term R.* 160.   *Rich* v. *Parker, Id.* 705.   So also will a voluntary departure from the usual course of the voyage.   3 *Kent's Com.* 250.   Or any unnecessary delay during the voyage, whether at sea or in port. *Coffin* v. *The Newburyport Marine Insurance Company,* 9 *Mass. R.* 436.

4. That as the contract of the parties relates to an insurance upon buildings *used in a particular way,* the jury should have been instructed, that if the loss occurred in consequence of any *other use,* their verdict must be for the defend. ants.

On the other side, it was remarked *in limine,* that in this case there were peculiar reasons for a fair and liberal construction of the contract, the parties being members of the same corporation, designed for the *mutual benefit* of all.   The policy issued, and the application and proposals on which it

is based, are in the form prescribed by the company. A loss having occurred, the company refuse payment, not on the ground of fraud, or gross negligence, or increase of hazard, or that the actual loss is less than the sum insured, or on any other ground of equitable defence ; but on the ground of a *technical breach of warranty.* The operation of such a breach of warranty, even as applied to *marine* policies, is *harsh,* and often defeats the intention of the parties. The court will not be disposed to extend it. 1 *Phil. Ins.* 351. 353. *Wood* v. *Hartford Ins. Co.* 533. 544. *Houghton &* al. v. *Manufacturers' Mutual Fire Ins. Co.,* 8 *Metc.* 114. 120. The counsel for the plaintiff then contended, 1. That in this case, there was no warranty ; the term, " barn," with its adjuncts, being used only to *identify* the subject of insurance, without implying any covenant as to the manner in which it should be occupied. *Catlin* v. *Springfield Fire Ins. Co.,* 1 *Sumn.* 434. 440, 1. *Dobson* v. *Sotheby* & al. 1 *Moo. & Mal.* 90. (22 *E. C. L.* 260.) *Rafferty* v. *New-Brunswick Fire Ins. Co.,* 3 *Har. R.* (*N. J.*) 480. *Delonguemare* v. *Tradesmen's Ins. Co.,* 2 *Hall,* 589.

2. That if the expressions used in this policy do constitute a warranty, that the buildings were, at the time of the policy, a barn and cider-mill, and should so continue to the time of the fire, there has been *no breach* of this warranty. For, in the first place, such they were and such they continued to be. Secondly, they were *used* for their *appropriate purposes ;* and if there was any *additional* use, it was only *occasional,* and not customary or permanent. *Hazard* v. *New-England Marine Ins. Co.* 1 *Sumn.* 218. 222. *Lounsbury* v. *Protection Ins. Co.* 8 *Conn. R.* 459. *Fowler* & al. v. *Ætna Fire Ins. Co. of New-York,* 7 *Wend.* 270. *Shaw* v. *Robberds* & al. 6 *Ad. & Ell.* 75. (33 *E. C. L.* 12.) *Pim &* al. v. *Reid* & al. 6 *Man. & Gran.* 1. (46 *E. C. L.* 1.)

3. That the technical rules of warranty can have no application to this contract ; for in the 25th section of the charter certain specified risks are *excluded ;* and where there are no words of exclusion, it is a fair inference that others are covered. 2 *Sup. U. S. Dig.* 203. *pl.* 25.

WAITE, J. Two exceptions have been taken to the charge given to the jury in the court below.

*Tolland,*
July, 1 49.

Billings
*v.*
Tolland Co.
Mutual Fire
Ins. Company.

*Tolland,*
July, 1849.
———————
Billings
*v.*
Tolland Co.
Mutual Fire
Ins. Company.

The first is, that the words in the policy, " all the above barns are used for hay, straw, grain unthreshed, stabling and shelter"—are a warranty that the buildings should be used in that manner, and in no other.

But we do not so understand the language of that instrument. The clause was inserted merely for the purpose of giving a description of the buildings insured, and not to limit their use or to deprive the plaintiff of the enjoyment of his property in the same manner as buildings of that description are generally used and enjoyed. Had they been described as painted white, no one would contend that such a description would make it necessary for the insured always to keep them of that colour, or that the obligation of the insured would be at an end as soon as the paint had become worn off and gone .And the reason is obvious. Such a description would be construed merely as such, and not as a warranty that the buildings should always be kept painted.

It was indeed competent for the defendants, in the policy, to limit their liability, and prescribe in what manner the buildings, during the continuance of the policy, should be used. And the plaintiff, by the acceptance of the defendants' obligation, upon such terms, would be bound by them.

To some extent, this has been done, in the present case. It was provided, that " no ashes should be kept in any part of the buildings." The keeping of ashes, contrary to that provision, would destroy the obligation of the contract. But this provision differs materially from the former. One is a prohibition—the other, a description, or at most, a warranty that the buildings, at the time they were insured, were such as they were described to be in the policy.

2. In the next place, it is claimed, by the defendants, that as the insurance was upon buildings used in a particular way, the jury should have been instructed, that if the loss were occasioned by any other use, the plaintiff could not recover. The court informed the jury, that a single act or so, in the use of the buildings, which did not belong to the common, ordinary and appropriate use, would not defeat the policy and prevent a recovery, unless such acts were fraudulent, or grossly careless, and if grossly careless, were also the cause of the loss. The defendants insist, that this instruction was wrong; that the plaintiff cannot recover, if

the fire was occasioned by acts done by the plaintiff, not in the common and ordinary use of the buildings.

*Tolland,*
July, 1849.

Billings
*v.*
Tolland Co.
Mutual Fire
Ins. Company.

The authorities which have been cited, if well founded, go far to sustain the charge of the court in this particular. Thus, where a barn insured against fire, required tarring, and a fire was lighted inside of the building, and a tar barrel brought in, for the purpose of performing the necessary operation; in the absence and by the negligence of the plaintiff's servant, the tar boiled over and took fire, which was communicated to the building, and the barn was burnt; yet it was holden, that the insured was entitled to recover. *Dobson* v. *Sotheby,* 1 *Moo. & Mal.* 90. (22 *E. C. L.* 260.) So where there was an insurance upon a kiln for drying corn, and the insured permitted some bark to be dried in it, in consequence of which, the building was burned; the court held, that as there was no clause in the policy amounting to an express warranty that nothing but corn should be dried in the kiln, the insurers were liable. *Shaw* v. *Roberds,* 6 *Ad. & Ell.* 75. (33 *E. C. L.* 12.)

The defendants however say, that these decisions have gone too far, and cannot be vindicated. We do not consider ourselves necessarily called upon to examine the principles upon which those decisions are founded, for the purpose of testing their correctness, because, for another reason, we think the defendants are not entitled to a new trial.

The acts done by the plaintiff are set forth in the motion, so that we can see what they were, and whether they were a departure from the common and ordinary use of such buildings. We very well know, that farmers in the state are in the habit of using their barns for a variety of purposes, connected with their agricultural business, besides that of storing their hay and stabling their cattle. Their barns are frequently used as a shelter for their wagons, plows, sleds, and other farming implements. When the plaintiff caused the insurance to be effected on the buildings upon his farm, it is not to be presumed that he meant to deprive himself of their common and ordinary use; or that the defendants, by their policy, intended any such thing. And, excepting so far as there is an express prohibition in relation to the use of them, as in the keeping of ashes, the understanding of the parties unquestionably was, that the common and ordinary

*Tolland,*
July, 1849.

Billings
*v.*
Tolland Co.
Mutual Fire
Ins. Company.
use of them was to be continued in the same manner as if the policy had never been executed.

The acts done, in what is called the *South* or cider-mill barn, may be laid out of consideration ; for the motion states, that they were all performed and the building cleared out, previous to the fire, and nothing left in it, except some apples. These acts could not therefore have produced the fire.

And then with respect to the other barn, the plaintiff prepared and left in it the steep for his seed wheat, and stored in it the paints which he was using for painting his house. We discover nothing in these acts more than what is usual and common among farmers. They are very different from the act of storing lime and paints for merchants, or for purposes wholly unconnected with the business of the farm.

If therefore the charge of the court, in this particular, although sustained by high authorities, is unsupported by principles, (and upon this part of the case we express no opinion,) we do not see that the defendants, upon their own shewing, have sustained any injury ; and consequently, are not entitled to a new trial.

The other Judges were of the same opinion.

New trial not to be granted.