WOODBURY SAVINGS BANK AND BUILDING ASSOCIATION *vs.* THE
CHARTER OAK FIRE AND MARINE INSURANCE COMPANY.

It is the settled policy of our law to treat local agents of insurance companies, who are authorized to procure and forward applications for insurance, as the agents of the companies and not of the applicants, in any mistakes of the application made by them or by the applicant under their direction.

An agent employed by such a local agent, in pursuance of a custom known to and approved by the company, to solicit and forward to him applications for insurance, held to stand in the same relation to the company as to such mistakes.

Where a mortgagee applied for insurance through such an agent, intending to procure an insurance of his mortgage interest and so stating to the agent, but the agent drew the application as for an insurance on the property itself, in the name of the mortgagor and as his property, the amount to be payable in case of loss to the mortgagee, and so made the application and had the policy so made in the belief that such was the proper legal mode of effecting an insurance on the mortgage interest, it was held that the mistake could be corrected by a court of chancery although it was one of law and not of fact.

Held also that the insured was not affected by the fact that the agent had been instructed by the company not to take applications for insurance upon mortgage interests, he having no knowledge of such a limitation of the powers of the agent.

A *condition in a policy that no suit shall be brought in case of loss unless within six months after the loss, is valid and binding on the insured.*

But *where an action at law was brought on the policy within the time limited, which it was found could not be sustained by reason of a mistake in the form of the policy, and a bill in equity was brought while that suit was pending, and after the six months had expired, for the correction of the policy and for an injunction against the defense set up in the action at law, it was held that the suit was not barred by the expiration of the time limited.*

Where *a condition of the policy provided that it should become void if any further insurance was obtained on the property insured, without the consent of the insurance company indorsed on the policy, and the owner of the equity of redemption procured a later insurance of the property of which no notice was given to the company and of which the party originally insured had no knowledge, it was held that as the original insurance was intended as an insurance of the mortgage interest of the insured, and was to be regarded as equitably such, the later insurance was not a further insurance of the same property, and not a breach of the condition.*

BILL in equity for the correction of a policy of insurance, and for an injunction against a defense set up by the respondents in an action at law on the policy. The superior court made a special finding of the facts.

On the first of August, 1857, Henry S. Parsons, of New Haven, was the agent of the respondents, who were located at the city of Hartford, with the usual powers of the local agents of insurance companies, to obtain risks and issue policies of insurance, and with the assent of the company he had advertised in the newspapers and otherwise as agent. The officers of the company had however orally directed him not to insure mortgage interests, but the petitioners had no knowledge of this restriction. At this time the petitioners held a mortgage on certain property situated in Naugatuck, given to them on the 6th of May, 1856, by Smith, Beecher & Beers, to secure a note for $2,800 for money borrowed by them. The mortgagors had gone into insolvency, and the title to the premises was in dispute at law. Under these circumstances the petitioners wished to obtain an insurance on the property which would secure their mortgage. Charles A. Somers was the agent of the petitioners to procure such insurance. Previous to this time one Orson Brooks, who was an agent for several insurance companies, had acted in connection with Parsons in the following manner :—If Brooks, in the course of his busi-

ness, met with some person who wished to obtain insurance under such circumstances that he did not wish to issue a policy in any of the companies for which he was agent, he communicated with Parsons, and caused an application to be made through Parsons to some company of which he was agent. If a policy of insurance was issued by or through Parsons to such person, Parsons allowed to Brooks a portion, generally one-half, of the commission on the insurance. This arrangement was in pursuance of a general custom which prevails among insurance agents of making use of the assistance of each other to procure business, and this custom is well known to the officers of insurance companies, and was well known to the respondents. The respondents however supposed that the persons so employed were acting as agents of the insured and not of the companies. Parsons had delivered to Brooks blank applications, policies of insurance and renewal receipts, which Brooks had publicly exhibited as proof that he was authorized to act for Parsons, and he had repeatedly represented himself as the agent of Parsons ; and he so represented himself to Somers. Parsons also had on various occasions represented Brooks as his agent, and had addressed him in letters as such. When a policy was in this way effected through Brooks, the policy and renewal receipts of it were delivered by Parsons to Brooks, to enable him to collect the premium, and he did in such cases collect the premium and take out the part belonging to himself and pay the balance to Parsons. These facts were not known to the insurance company, unless they are to be presumed to know them from the custom to which reference has been made. In pursuance of this course of business between Parsons and Brooks, Brooks applied to Somers to insure, and mentioned the respondents as a company from which he could obtain a policy through Parsons. Somers informed Brooks that his object was to insure the mortgage of the petitioners ; that he did not know the situation of the property ; that he understood the title to be in dispute, and he did not know how the record stood ; and that if he would examine into it and procure for the petitioners a policy of insurance in the proper

form to insure the mortgage, of which he was no judge himself, he would pay him the premium, which was sixty dollars. This Brooks undertook to do. Somers had no intention to employ nor did he suppose he was employing Brooks as his agent, but supposed he would act as the agent of the insurance company. Brooks in doing this undertook to act and supposed he was authorized to act as the agent of the insurance company. Brooks communicated to Parsons the substance of what Somers said to him. Parsons was unwilling to take the risk without seeing the situation of the property, and went with Brooks to view the premises, and made inquiries of persons whom he found on the premises, and took some measurements. Neither he nor Brooks had any communication with Smith, Beecher & Beers. A blank application was delivered by Brooks to Somers to sign, with the exception that the heading was filled with the name of Smith, Beecher & Beers, and the amount to be insured, the premium and the amount of the mortgage were inserted. Somers, before he signed it, added to the names of Smith, Beecher & Beers the words " or assigns," and then signed it and delivered it to Brooks. Brooks took it to Parsons, and they together filled up the application. Parsons completed the policy and delivered it to Brooks, forwarded the application to the company, and Brooks delivered the policy to Somers, who paid the premium to him. The respondents have received and still retain the premium. Brooks received a part of the commission on the premium. The object of Somers, Brooks and Parsons was to insure the petitioners as mortgagees, and the mistake arose from the supposition of Brooks and Parsons that as Smith, Beecher & Beers were the mortgagors, a policy issued to them, payable in case of loss to the petitioners, would secure their mortgage, although the mortgagors had parted with the legal title. Somers relied on Brooks and Parsons to make the insurance in such form as to insure the petitioners ; and he supposed that in doing this, they would act as the agents of the respondents, and not of the petitioners or of himself.

One Enos Hopkins, on and prior to the 4th of January,

1858, was trustee in insolvency of the Connecticut Wheel Company, and as such trustee held a mortgage on a building with the land on which it stood, which was embraced in the mortgage to the petitioners. This mortgage was given by Smith, Beecher & Beers subsequently to the mortgage to the petitioners. Hopkins had obtained a decree of foreclosure upon this mortgage, and the time limited in the decree of foreclosure was not to expire until after the 4th of January, 1858. By sundry conveyances from the members of the firm of Smith, Beecher & Beers, the equity of redemption at that time was in Wooster Brothers; all of which conveyances were made, and the petition of foreclosure brought, before the policy in this suit was issued; no change of title being made on the town records between the issuing of the policy and the time of the fire. By an arrangement between Hopkins and Parsons, as agent of the New London County Mutual Insurance Company, a policy of insurance for $1,200 was issued on this property, on the 4th of January, 1858, to the Wooster Brothers as owners, payable to Hopkins as trustee. Previous to this time the Wooster Brothers had assigned to a trustee for the benefit of their creditors. No notice was given to the respondents of this policy, unless the fact that Parsons was at the time the agent of both these insurance companies constituted such notice. And the petitioners never had any actual knowledge of it till after the loss. The fire occurred after the decree of foreclosure had taken effect.

The petitioners brought an action at law on the policy, by writ dated December 20th, 1858, and served December 23d, 1858, which is still pending before the superior court for Litchfield county. The present petition was served on the 25th of March, 1861.

Upon these facts the case was reserved for the advice of this court.

*Kellogg* and *Cothren,* for the petitioners.

1. The contract was intended to be a contract of insurance upon the petitioners' mortgage interest. The mistake in the form of the policy was made by the agent of the respondents.

As made it failed to effect what both parties intended and desired to accomplish. In these circumstances a court of equity will correct the mistake. *Malleable Iron Works* v. *Phœnix Ins. Co.*, 25 Conn., 465. It does not affect the case that by the correction of the policy it will be made a contract with the petitioners while it is on its face a contract with Smith, Beecher & Beers. The court has found expressly that the contract was made with the petitioners alone, and such a mistake can be corrected as well as any other.

2. The respondents are bound by the acts of Parsons as their agent, and also by the acts of Brooks, who was employed by Parsons in pursuance of a custom known to and approved by the respondents. Story on Agency, §§ 17, 19, 60, 73 ; 1 Parsons on Cont., 41, 50, 72 ; *Beebe* v. *Hartford County Mut. Fire Ins. Co.*, 25 Conn., 51 ; *Hough* v. *City Fire Ins. Co.*, 29 id., 10 ; *Ames* v. *N. York Union Ins. Co.*, 4 Kernan, 253. If Brooks is not to be regarded as the agent of the respondents, yet Parsons adopted all his acts and completed the business himself, and all that was done is to be regarded as done by Parsons himself.

3. The Hopkins insurance was not a violation of the condition as to further insurance. That condition was intended to apply solely to further insurance obtained by the insured on the same property. Here the petitioners had no knowledge of this later insurance, and since their insurance was in equity an insurance of their mortgage interest, it is not to be regarded as a further insurance on the same property. *Foster* v. *Equitable Mut. Ins. Co.*, 2 Gray, 220 ; *Tyler* v. *Ætna Ins. Co.*, 12 Wend., 507 ; *Ætna Ins. Co.* v. *Tyler*, 16 id., 385, 396.

4. The expiration of the six months limited by the policy for suits, does not bar this suit. The action at law was brought within the time limited, and this suit is merely in aid of that. Such a condition is in derogation of the rights of parties and will be construed strictly. *Wilson* v. *Ætna Ins. Co.*, 27 Verm., 99 ; *Amesbury* v. *Bowditch Mut. Fire Ins. Co.*, 6 Gray, 596.

Woodbury Savings Bank *v.* Charter Oak Insurance Co.

*Hubbard* and *C. R. Chapman*, for the respondents.

1. Brooks was not the agent of the respondents. When Somers directed him to " examine the title and make a good policy, &c.," he became the agent of the petitioners for that purpose. *Smith* v. *Empire Ins. Co.*, 25 Barb., 497. Parsons was the agent of the respondents, but could not delegate his authority. Story on Agency, §§ 13, 14, 15. Even if Brooks was the agent of the respondents, they were not bound by his parol undertaking to examine into the title and " issue a good policy," &c. ; because it is not within the general scope of the authority of an insurance agent.

2. The petitioners were guilty of gross neglect in not communicating full and accurate knowledge respecting the property insured, and in accepting and retaining the policy without notice of its defects to the respondents. *Richardson* v. *Maine Ins. Co.*, 46 Maine, 394 ; *Pendar* v. *Am. Mut. Ins. Co.*, 12 Cush., 469 ; *Smith* v. *Empire Ins. Co.*, 25 Barb., 497 ; *Hygnum* v. *Ætna Ins. Co.*, 11 Iowa, 21.

3. The mistake claimed, if there was one, was one of law and not of fact, and can not be corrected. 1 Story Eq. Jur., § 137, and notes.

4. The later insurance by Hopkins on the same property avoids the policy. It is directly in violation of the condition. The knowledge of Parsons while acting as agent of another company was no notice to the respondents. *Forbes* v. *Agawam Ins. Co.*, 9 Cush., 470. · If it were it would not avail, as it was not indorsed on the policy. *Worcester Bank* v. *Hartford Ins. Co.*, 11 Cush., 265.

5. The petition having been brought more than six months after the loss occurred, the action is barred by the limitation expressed in the policy. *Cray* v. *Hartford Ins. Co.*, 1 Blatch. C. C. R., 280 ; *Wilson* v. *Ætna Ins. Co.*, 27 Verm., 99 ; *Fullam* v. *N. York Union Ins. Co.*, 7 Gray, 61 ; *Amesbury* v. *Bowditch Ins. Co.*, 6 id., 603 ; *Brown* v. *Roger Williams Ins. Co.*, 5 R. Isl., 394 ; *Brown* v. *Savannah Mut. Ins. Co.*, 24 Geo., 97 ; *N. West. Ins. Co.* v. *Phœnix Oil & Candle Co.*, 31 Penn. S. R., 448 ; *Peoria Ins. Co.* v. *Whitehill*, 25 Ill., 466 ; *Carter* v. *Humbolt Ins. Co.*, 12 Iowa, 287 ; *Stout* v.

*City Ins. Co.,* id., 371; *Schroeder* v. *Keystone State Ins. Co.,* 2 Philadelphia R., 286; *Williams* v. *Vermont Mut. Ins. Co.,* 20 Verm., 222; *Dutton* v. *Same,* 17 id., 369; *Gooden.* v. *Amoskeag Ins. Co.,* 20 N. Hamp., 73; *Portage County Ins. Co.* v. *West,* 6 Ohio S. R., 599; *Ames* v. *N. Y. Union Ins. Co.,* 4 Kernan, 253; *Ketchum* v. *Protection Ins. Co.,* 1 Allen, N. B., 186; *Lampkin* v. *Western Assu. Co.,* 13 Up. Can. Q. B., 237, 361; *Provincial Ins. Co.* v. *Ætna Ins. Co.,* 16 id., 135; *Hickey* v. *Anchor Ins. Co.,* 18 id., 433; *Ripley* v. *Ætna Ins. Co.,* 29 Barb., 552; *Eagle Ins. Co.* v. *Lafayette Ins. Co.,* 9 Ind., 443.

DUTTON, J. The respondents issued their policy intending to insure the petitioners on a mortgage interest which they held in the property in question. The agent of the petitioners represented to the local agent of the respondents what their object was, and that the legal title to the property had become so complicated and doubtful that he could not accurately describe it, and requested him to make the necessary examinations and issue such a policy as would insure their interest. This the agent attempted to do, but through mistake and misapprehension as to the proper mode of doing it, he made out the policy in the name of the original mortgagees, without their knowledge or co-operation, payable in case of loss to the petitioners as owners of the mortgage. After the building had been burnt the respondents refused to pay the loss, on the ground that the conditions of the policy as to the description of the title to the property had not been complied with. The petitioners then brought their action at law, which is still pending, on the policy. This court held that on such a policy no action at law would lie in favor of the mortgagees. 29 Conn. R., 374. This petition was then brought, praying for a correction of the mistakes and an injunction against the defendants taking advantage of the failure to comply with the conditions of the policy. The respondents deny that the local agent, in entering a description of the property in the application for the insurance, was their agent.

The principal question is, whether under these circumstan-

ces, which as we proceed will be more particularly noticed, the petitioners are entitled to relief. There are other questions involved, which will be considered before we close.

The records of the courts of this state will show that we have maintained the integrity of contracts, and the necessity of a strict compliance with all conditions affecting their validity, although in some instances almost to the denial of justice. Thus in *Glendale Woolen Co.* v. *Protection Ins. Co.*, 21 Conn., 19, and in *Sheldon* v. *Hartford Fire Ins. Co.*, 22 id., 235, this court held that the answer, " There is a watchman nights," to the question, " Is there a watchman in the mill during the night?" implied that there was a watchman in the mill during the whole of each night, and that consequently the absence of the watchman from twelve o'clock Saturday night till twelve o'clock Sunday night was at law an unexplainable breach of the condition and prevented a recovery. It is difficult to reconcile the common mind to the justice of such decisions, and we can hardly satisfy ourselves that the failure to recover was not owing more to the misfortune than to the fault of the plaintiff, and that in all probability the insurance would have been made by the company just as soon and at the same rate if the description had been strictly accurate. But in such cases no doubt public policy requires a strict enforcement of the terms of the contract. So in *Bouton* v. *Am. Mut. Life Ins. Co.*, 25 Conn., 542, a failure to pay the premium on the day, even with the consent of the local agent, where there was not sufficient proof that such agent was authorized to waive the time of payment, was held to bar a recovery. The case of *Treadway* v. *Hamilton Mutual Ins. Co.*, 29 Conn., 68, and the former decision in this case, 29 Conn., 374, show the same determination to apply the strict rules of law to policies of insurance, although in the former the grossness of the misdescription and in the latter the manifest inadmissibility of the evidence divest the cases of any claim to sympathy.

The case of *Lounsbury* v. *Protection Ins. Co.*, 8 Conn., 459, in which the condition specified " carpenters in their own shops or in buildings erecting or repairing," as extra-hazard-

ous, and as avoiding a policy unless named in it, and in which it was held that the condition was not broken by the use of a room in the building for repairing the machinery ; and the case of *Billings* v. *Tolland County Mut. Fire Ins. Co.*, 20 Conn., 139, in which it was held that the temporary use of a barn for slacking lime and mixing paints, and leaving the materials for a short time in the barn, were not, when in conformity with common usage, a fatal departure from the description—" all the above described barns are used for hay, straw, grain unthreshed, stabling and shelter," may seem to indicate a relaxation of strict rules ; yet they will be found not to have gone further at least in that direction than the cases of *Dobson* v. *Sotheby*, 1 Mood. & Mal., 90, and *Shaw* v. *Robberds*, 6 Adol. & El., 75.

But the courts of this state have not thought it proper to follow the precedents made by some other courts, of regarding local agents, in rendering aid in the issuing of policies, as the agents of the applicants rather than of the insurance companies. They have rather taken the ground that public policy and the protection of the community require that the contrary rule should be adopted. A modern policy is a very complicated contract. Before executing almost any other instrument of equal perplexity, the parties would deem it necessary to take the advice of able counsel. Frequently questions arise as to the proper construction of the terms used, which divide the opinions of the most learned jurists. Yet the insured are bound at their peril, however ignorant they may be on points of law, to give them their true legal construction. Now we know from common observation that not one in a hundred of those who procure policies give any attention whatever to the finely printed page containing the conditions of a policy. They can not afford to spend the time required to study them over, and they take it for granted that they would not be enlightened if they should. They rely with full confidence, and whatever may be the law, or whatever stipulations may be inserted in the policy, they always will rely, on the representations of the agents, and always will regard them as the repre-

sentatives of the company, and will always consider themselves as safe in doing whatever receives their sanction.

These local agents however are under a strong temptation to use undue influence to increase their business and at the same time to screen as far as possible their employers from loss.   It was well remarked by Ellsworth, J., (25 Conn., 477,) " There is great danger that injustice will be done to persons obtaining insurance who are inexperienced in the business and place full confidence in the word of an insurance agent, accredited as he is by his public appointment."  This court have therefore in a series of decisions held companies bound by the acts of local agents whenever it could be done consistently with the evidence and rules of law.   Thus in *Beebe* v. *Hartford County Mut. Fire Ins. Co.,* 25 Conn., 51, it was held that an agent whose business it was to receive and forward to the company applications for insurance, is the agent of the company to receive a disclosure of facts, although they instruct him privately to regard himself in so doing as the agent of the applicant.   In *Bouton* v. *American Mut. Life Ins. Co.,* 25 Conn., 542, it was held that a local agent could receive premiums, and could agree to be personally responsible for the premium without actual payment of it, so as to bind the company.   In *Sheldon* v. *Connecticut Mut. Life Ins. Co.,* 25 Conn., 207, it was left to the jury to say, from all the circumstances, whether the agreement of the local agent that the premium might be paid at a subsequent day, contrary to the express condition of the policy, was binding on the company. And in *Hough* v. *City Fire Ins. Co.,* 29 Conn., 10, evidence was permitted to go to the jury, that the applicant stated to the local agent the exact condition of the property, and that the application was filled out by the agent himself, accompanied with evidence tending to show that the defendants gave their assent to such conduct on the part of the agent.

These were all actions at law.   But the case of the *Malleable Iron Works* v. *Phœnix Ins. Co.,* 25 Conn., 465, which was a petition in chancery, is more directly in point.   The business of the agent in that case was to procure applications for insurance and forward them to the company for acceptance.

The application was in several particulars made out incorrectly by the direction or direct act of the agent himself. The facts were correctly stated by the applicant to him. The petition prayed for a correction of the mistake as having occurred between the applicant and the company itself. The court held that, in regard to whatever was incident to the business of procuring and forwarding applications, the agent could fairly be considered as representing the company, and granted the relief sought. That case was undoubtedly regarded by the present petitioner as a precedent which he could safely follow.

Let us see then whether Parsons and Brooks ought not, from the facts found by the court below, to be regarded as agents of the company.in making the preliminary contract to insure. First, was Parsons their agent? He had publicly advertised himself generally as the agent of the company, and this must be presumed to have been with their knowledge. He inserted his name as the agent of the company in every policy which was issued through his office. A corporation must necessarily act by agents. This unexplained would be conclusive proof of a general agency and would authorize him to transact any regular business of the company. There is nothing whatever to restrict his agency, except the fact that it was generally known that he was a local agent, and the general understanding of the limitation of the powers of such an agent. But we know of no such limitation that would prevent a local agent, whose peculiar business it is to receive applications for insurance and generally to issue policies in pursuance of them, from making any agreement relating to this particular business which any agent of the company could do. Any such restriction would be extremely embarrassing and would lead to injustice.

Some part of the arrangement was made with Brooks, but he too was the agent of the respondents, and whatever he did was approved of by Parsons. Brooks was employed by Parsons in pursuance of a general custom which prevailed among local agents, and which was known to and approved of by the companies generally and by this company in particular.

The respondents had the benefit of his services. A portion of the premium was received by him, and he must therefore be considered as in the employment of the respondents.

The case then is one where there was an agreement on the part of the company to insure the petitioners on their interest as mortgagees in the property in question.

There was a mutual mistake as to the proper mode of filling out the papers on both sides. The application was made out in the wrong name and the policy was made to the wrong person. But there was no fraud or misrepresentation. The papers would have been made out right if they had known how to do it, and it is immaterial whether the mistake was one of fact or of law. *Stedwell* v. *Anderson*, 21 Conn., 139.

It is found that the company privately instructed Parsons that he must not insure mortgage interests. This however could not affect the petitioners, who had no knowledge of any such restriction on the powers of the agent. *Beebe* v. *Hartford County Mut. Fire Ins. Co.*, 25 Conn., 51.

It is claimed that no relief can be granted, because the limitation for the bringing of suits contained in the conditions of the policy expired before this suit was brought. If relief only had been prayed for, we think the objection would have been fatal. The long array of cases cited by the counsel for the respondents is decisive. But the petitioners bring this bill in aid of the suit at law, which was confessedly commenced before the limitation expired and which is still pending. Whatever further is asked for may be regarded as barred without affecting this part of the petition. It would be taking very strong ground indeed to hold that the right of prosecuting a suit in the ordinary way, although the issuing of new process might be necessary, has been relinquished by such a condition.

The object of the condition evidently was in part to prevent delay in the determination of all questions of loss, and in part to enable the company to know in season whether a claim will be prosecuted. The object of the respondents has been answered, and it would be manifestly unjust to allow such an

objection to prevail. No cases have been cited which sustain the ground taken by the respondents.

A point was made that Hopkins, a trustee in insolvency, had subsequently to the issuing of this policy procured a policy of insurance on the property in question which was not indorsed on this policy and of which these respondents were not notified. But aside from the fact that that policy was obtained by a stranger without the cooperation or knowledge of the petitioners, and the fact that it was issued by Parsons as agent of another company at the same time that he was agent of the respondents, and viewing this as a policy on the mortgage interest, there was no subsequent insurance on the same property.

The petitioners are entitled to a decree correcting the mistakes found by the court below, and enjoining the defendants in the suit at law against objecting to the evidence offered by the plaintiffs on any ground which such a correction would remove, and from claiming and introducing evidence to show that the property described in said policy was not the property of the petitioners.

In this opinion the other judges concurred.