GEORGE H. BISHOP AND ANOTHER *vs.* THE CLAY FIRE AND MARINE INSURANCE COMPANY.

An insurance company can not ordinarily insure by parol. But the parties may agree by parol as to the terms of a policy to be issued, and if the policy as written is by mistake materially different from the parol agreement a court of equity may correct it.

A bill in equity for the correction of such a policy should show clearly the parol contract that was made and in what the error consists.

And the proof of the parol contract must be so clear as to place the matter beyond doubt.

The power to reform a written contract is one in the exercise of which there should be great caution.

B and C, trustees under a second railroad mortgage and who were in possession of and running the road as such trustees, with a lien upon the property in their favor individually for advances made for the road, applied to an agent of an insurance company for insurance upon a depot building belonging to the road. A policy was issued to them as trustees, insuring their interest as such. The building was burned and a suit on the policy brought by them as trustees was successfully defended against on the ground that before the fire the first mortgage had been foreclosed and the property of the road transferred to a new corporation. B and C then brought a bill in equity for the reformation of the policy, alleging that they asked for, and that the agent agreed to give them, a policy insuring their lien as individuals for money advanced for the road; and it was found that they made such a proposition to the agent and that he assented to it. But it further appeared that the policy was drawn by the agent the same day, that the petitioners received it the same day without objection, that after the burning of the building they gave notice to the insurance company of their loss as trustees, and that they brought the suit upon the policy as trustees. Held that these facts were important as indicative of the understanding of both parties at the time, and that, as there was nothing to break their force except the words which passed between them as recollected by witnesses after more than six years, and after a controversy had arisen, the parol contract claimed was not established with such certainty as would warrant the court in amending the policy in accordance with it.

The right of the petitioners to reimbursement from the property of the road for advances which they had made, although one which the court would regard and protect, yet until it had been ascertained and defined by the decree of the court, was too uncertain an interest to be insurable.

But if such an insurance would be valid, yet it would be of very question-
able policy, and a court would not establish it by reforming a contract of
insurance unless it appeared with almost absolute certainty that the
parties intended it.

[Two Judges dissenting—holding that upon the finding of the court
below the question of fact as to the parol agreement was no longer an
open one, and that the interest was an insurable one.]

BILL IN EQUITY to reform a policy of insurance; brought'
to the Superior Court in Middlesex County, and reserved
upon facts found for the advice of this court. The policy
is the same one on which the suit at law was brought which
is reported in 45 Conn. R., 430. The case is sufficiently
stated in the opinion.

*S. E. Baldwin*, for the petitioners.

*F. Chamberlin* and *E. S. White*, for the respondents.

CARPENTER, J. This is an application to reform a fire
insurance policy by correcting an alleged mistake therein.
The bill sets out the first mortgage of the New Haven,
Middletown & Willimantic Railroad Company, dated
May 1st, 1869; also the second or "convertible mortgage"
as it is called, dated July 1st, 1871. It then alleges that
the company made default under both mortgages May 1st,
1873; that the trustees named in the second mortgage
resigned February 21st, 1874, and the petitioners, George
H. Bishop and John N. Camp, were duly appointed and
qualified as their successors; that they took possession of all
the mortgaged property, including the freight depot build-
ing in Middletown, which is the subject of this controversy;
that they made large pecuniary advances as trustees, in-
curred large pecuniary obligations, and were entitled to a
large sum as compensation for their services, exceeding the
sum of $2,000. It then alleges that Bishop and Camp
applied to the respondents to insure said depot building,
that they did insure it, that it was destroyed by fire during
the lifetime of the policy, that due notice was given and

proofs of loss furnished, that a suit was brought on the policy, and that the defendants, the present respondents, appeared and pleaded in defence that prior to the fire the depot building was sold or transferred, and the title and possession thereto and thereof changed, and the interest of the assured therein as such trustees terminated; and that after a trial resulting in a verdict for the assured, a new trial has recently been ordered on the ground that the defence is a sufficient answer at law under the terms of the policy.

It further alleges that on the 23d day of October, 1876, the Boston & New York Air Line Railroad Company paid to Bishop and Camp the full sum due to them in consequence of their doings and advances under the trust, and received from them a written assignment of their claim under the policy of insurance, with authority to prosecute and maintain all necessary suits.

The bill then refers to the ground on which the new trial was ordered—the foreclosure of the first mortgage and a subsequent sale of the property to the Boston & New York Air Line Railroad Company—and then proceeds as follows: "But the petitioners say that it is contrary to equity and good conscience for the defendant to insist on said defences, because they say it was their intention and that of the defendant, at the time both of the negotiation and of the execution of said policy, that said policy should insure, and should be so expressed as to insure, the said George H. Bishop and John N. Camp and their executors, administrators and assigns upon their interest in said depot building to the extent of two thousand dollars, against loss by fire, for the purpose of securing them in case of fire to the extent of two thousand dollars for and upon their said pecuniary advances and claims for services and obligations assumed while in possession of said mortgaged property as trustees under said convertible mortgage; and that their said interest in and lien upon said building of the character aforesaid was not lessened or impaired, but on the contrary preserved and strengthened by said decree of foreclosure, and remained in full force and effect down to and at the time of said fire and of bringing said action at law."

The bill then quotes at length the material parts of said decree relating to the interest of Bishop and Camp, and concludes as follows:—"And your petitioners further show that the description of the said Camp and Bishop, and of the interest insured, contained in said policy, was inserted by said Fowler," [the agent of the respondents,] "inadvertently and by mistake, and does not express the true intention of said parties to said insurance;" and prays for an injunction, reformation of the policy, &c.

It is claimed in behalf of the respondents that the bill does not allege with sufficient definiteness the contract of insurance which the petitioners claim was made by the parties. The bill may be open to some criticism, inasmuch as it does not clearly allege that any contract of insurance was in fact made by the parties prior to the issuing of the policy. No parol agreement or "meeting of minds" is in terms alleged, and it may be claimed with some force that the parties did not contemplate any contract except such as should be expressed in the policy, and therefore that the policy contains the only contract that was ever in fact made. If that is so it is manifest that the parties cannot substitute for it another contract which the parties did not make; in other words, the court cannot make a contract for the parties. *Thompsonville Scale Manufacturing Co.* v. *Osgood*, 26 Conn., 16.

It is doubtless true that an insurance company cannot ordinarily insure by parol; and in that sense it is true that no contract is made until the policy issues. We suppose however that the parties may agree by parol as to the terms of the policy, and that if a mistake occurs in respect to anything material a court of equity may correct it.

Carefully considered, the substance of the more material allegations in the bill may be stated thus:—Bishop and Camp applied to Fowler, the respondents' agent, to insure their interest in the building, and he agreed to do so. He thereupon issued a policy running to "the trustees of the convertible mortgage of the New Haven, Middletown & Willimantic Railroad Company," and not to Bishop and

Camp as individuals; that the parties intended that their individual interest should be insured, and that the description of the party insured was so made by inadvertence and mistake.

Assuming that to be the true meaning, and that all the allegations are sufficiently explicit, we will pass to the finding of the court.

The finding so far as it relates to the disputed facts, is as follows:—

"The defendant company was a corporation of Kentucky, authorized to make contracts of fire insurance in this state, and A. F. Fowler was on the 17th day of December, 1874, its authorized agent for that purpose at Middletown, to whom Bishop and Camp, on the 17th day of December, 1874, applied to insure their individual interests, (the same being a lien, claimed by them for individual advances,) on said depot building. Said Camp who made the application informed Fowler that Bishop and himself had made large personal advances for said railroad to an amount largely exceeding $2,000, and desired to insure their individual interest in said depot building. Fowler assented to this proposal and issued the policy in question."

To warrant the reformation of this contract there must have been a mutual mistake—a mistake by both parties. A mistake by one or a misunderstanding would not be sufficient.

In order to entitle the party to this relief, the policy must materially vary from the real contract of the parties, and the variance must be fully made out by the clearest evidence. Wood on Fire Insurance, § 479.

The party alleging the mistake must show exactly in what it consists, and the correction that should be made. The evidence must be such as to leave no reasonable doubt upon the mind of the court as to either of these points. *Hearne* v. *Marine Ins. Co.*, 20 Wall., 490.

The power of courts of equity to reform written instruments is one in the exercise of which great caution should be observed. To justify the court in changing the language

of the instrument sought to be reformed, in the absence of fraud, it must be established that both parties agreed to something different from what is expressed in the writing, and the proof upon this point should be so clear and convincing as to leave no room for doubt. *Mead* v. *Westchester Fire Ins. Co.*, 64 N. York, 455. The mistake should be proved as much to the satisfaction of the court as if admitted. *Ford* v. *Joyce*, 78 N. York, 618.

In the light of these principles let us examine this case. In the first place the alleged mistake has reference to the party insured. The policy issued to the trustees. It is alleged that it was intended that it should issue to Bishop and Camp, not as trustees but as individuals. The finding does not show, as it should, that both parties so understood it and so intended. The finding at least is ambiguous. It simply states the evidence—or rather a small part of the evidence—that they asked to have this individual interest insured and that Fowler assented to it. It is not found that he understood that he was asked to insure an interest so thin and shadowy as their individual interest in property which they held only as trustees. If he did not so understand it, and we cannot assume that he did, there is no foundation for the claim that he agreed to insure such an interest. We cannot infer such an understanding, for in a case like this nothing should be left to inference, especially from weak and uncertain evidence, but the fact itself should be explicitly found.

But weak as this evidence is in itself, it is very much weaker when considered in connection with the undisputed facts and circumstances attending it. On the same day that this conversation occurred between the parties the *agent issued the policy to the trustees.* That one fact, unless we are to attribute to the agent an intentional fraud, is of more weight in determining how he understood the arrangement than the conversation between the parties as reported by the court. But this is not all, for *on the same day* Bishop and Camp received the policy without objection. Now if they exercised ordinary diligence and caution in caring for their

own interests we may assume that they examined the policy when received and were satisfied that it was right. That also, occuring as it did at the time, was potent evidence that the policy was as the parties understood that it should be. Nor is this all; for, after the loss, Bishop and Camp *as trustees* gave notice to the respondent, made out two sets of proof of loss, brought a suit, obtained a verdict, and tried the case in the Supreme Court of Errors; during all that time claiming that they were insured *as trustees.* One of the documents referred to as proofs of loss was signed by both Bishop and Camp *as trustees* and the other was signed by Camp *as trustee,* and both were under oath and both alleged in substance that they were insured as trustees. Now there is absolutely nothing to break the force of these significant facts except the words which passed between the parties as recollected by witnesses after a period of more than six years, and after a controversy had arisen, accompanied with protracted litigation, based upon a theory consistent with the facts and inconsistent to some extent with the inference which it is claimed should be drawn from the conversation as reported.

On the whole it seems to us that the evidence (for the court has really reported to us the evidence only) decidedly preponderates in favor of the proposition that the policy conformed strictly to the agreement of the parties as understood by Fowler.

In the second place, the alleged mistake is not limited to the party, but extends to and materially affects the subject matter—the thing insured.

The policy that issued insured an interest which was created by deed and which appeared of record—an equity of redemption arising from the first mortgage, which was legally vested in the trustees. It was a certain and definite interest and was clearly insurable. But the policy, if reformed as requested, will, on its face, insure something entirely different, a vague, indefinite and uncertain interest—an interest in real estate neither created by deed nor appearing of record. Nor is it an incident of the deed

under which the trustees hold or of the office itself. The interest such as it is arises from and exists wholly in extrinsic facts and circumstances. When the trustees made advances and incurred expenses for the benefit of the trust estate their right to be reimbursed or indemnified at once arose; but that gave them no title to or lien on the real estate or any portion of it. Assuming that the expenses incurred were necessary, the trustees clearly had a right to reimburse themselves from the trust funds as received. If that source failed, as it apparently did, they had an equity that might properly be regarded as superior in point of right to that of a prior incumbrancer. That preference was granted by consent, although it may be doubtful whether the prior mortgagee could have been compelled to submit to it. However that may be, it was a sort of equity that might well be regarded and protected under some circumstances, but it was not such an equity as gave them an insurable interest in the property before it was ascertained and defined by the decree of court. Until then the interest was too uncertain.

Such an interest is closely analogous to the interest of an executor or administrator, who has a claim on the estate for his services and expenses, but who has never been regarded as having a personal interest in the estate.

We are inclined to think also that the personal interest of the trustees does not essentially differ from the interest of any other creditor of the trust estate. Will it be contended that every creditor may insure his interest in any or all the property? Every creditor of an estate held by an executor or trustee has an interest in the preservation of that property, but it by no means follows that he has an insurable interest in his own name. The executor or trustee represents the creditor, and his interest may and should be protected by an insurance in the name of such executor or trustee.

But if we concede that a policy insuring such an interest would be valid, there is another consideration which ought not to be overlooked in the discussion of this question. Is

it not obvious that no well managed responsible company would want to insure such an interest? The insured would hold a policy on property in which he has no interest—certainly none in its preservation. Its destruction would occasion him no loss; on the contrary might, and probably would be in a majority of instances, of some pecuniary advantage to him. In view of the moral risks incident to such policies a court of equity in the exercise of its power to reform written instruments should be exceedingly cautious not to bring into existence such a policy, unless it appears clearly and with almost absolute certainty that the parties intended it. Does such a certainty exist in the present case? On the other hand is it not reasonably certain that the parties did not intend to make such a contract?

For these reasons we advise the Superior Court to dismiss the bill.

In this opinion PARK, C. J., and LOOMIS, J., concurred.

PARDEE, J., (dissenting.) The statute, sections 90 and 91, page 334 of the Revision of 1875, provides that "when any railroad is in the possession of an assignee or trustee * * all expenses and damages incurred by such persons so in possession, in good faith, to improve the lines of the railroads so in their charge, shall be reimbursed to them from the earnings of such railroad while they have the possession thereof. The expenses of operating such railroad * * including repairs and all other reasonable expenses of the trustee * * and also a reasonable compensation to be allowed to the trustee by the Superior Court, shall be deducted from the earnings of the road before any part of such earnings shall be paid to the creditors." The petitioners, being such trustees in possession of the Boston & New York Air Line Railroad, advanced their own money to repair, improve and preserve the railroad property. These advances being unpaid, it is found that on December 17th, 1874, they applied to the respon-

dent "to insure their individual interests (the same being a lien claimed by them for individual advances,) in said depot building;" that they then informed the respondent that they "had made large personal advances for said railroad to an amount largely exceeding $2,000 and desired to insure their individual interest in said depot building," and that the respondent "assented to this proposal and issued the policy in question."

This is a finding that the minds of the parties met in an agreement for insurance by the respondent for the benefit of Camp and Bishop upon their individual interest in or lien upon the building, growing out of personal advances for the protection thereof made by them while they were trustees for the second mortgagees in possession; that the agent of the respondent intended so to write the policy as to express this mutual understanding; that through inadvertence and mistake he failed to give expression to such agreement; and that through like inadvertence and mistake Camp and Bishop accepted it as truly expressing the real agreement. And it makes clear the correction necessary to make the policy speak the minds of both parties as they were when it was written. And in the absence of any motion for a new trial we are to assume that the finding is based upon proper and sufficient testimony; therefore this court is barred from any discussion of the question of fact.

It is well settled that it is an office of a court of equity to afford relief when by mutual mistake a contract fails to express the mutual understanding of the parties. In *Henkle* v. *Royal Exchange*, 1 Ves. Sen., 318, the bill sought to reform a policy after a loss, for the reason that it did not express the intent of the contracting parties. Lord HARDWICKE said: "No doubt but this court has jurisdiction to relieve in respect of a plain mistake in contracts in writing as well as against frauds in contracts, so that, if reduced to writing contrary to the intent of the parties, on proper proof they would be rectified." In *Gillespie* v. *Morse*, 2 Johns. Ch., 585, Chancellor 'KENT said: "I have looked into most if not all of the cases in this branch of equity juris-

diction, and it appears to me established, and on great and essential grounds of justice, that relief can be had against any deed or contract in writing founded in mistake or fraud. The mistake may be shown by parol proof, and the relief granted to the injured party, whether he sets up the mistake affirmatively by bill or. as a defence.   *   *   It appears to be the steady language of the English chancery for the last seventy years, and of all the compilers of the doctrines of that court, that a party may be admitted ·to show, by parol ·proof, a mistake as well as fraud in the execution of a deed or other writing." In *Stedwell* v. *Anderson*, 21 Conn., 139, this court said: "When property has been conveyed through mistake by deed which the parties never intended should be conveyed, which the grantor was under no legal or moral obligation to convey, and which the grantee in good conscience has no right to retain, a court of chancery will interfere and correct that mistake, whether it arose from a misapprehension of the facts, or of the legal operation of the deed." See also *Snell* v. *Insurance Co.*, 98 U. S. Reps., 85; *Hearne* v. *Marine Insurance Co.*, 20 Wall., 488; *Woodbury Savings Bank* v. *Charter Oak Insurance Co.*, 31 Conn., 517.

In the case before us the petitioners expended their own money in repairing and preserving the property which was the subject matter of the contract for insurance. We are to assume that they did this relying solely for a re-payment upon their statutory right to detain for their own benefit the first earnings of the property; that their advances were equal in amount to the entire value of it; that the policy covered the whole of it; and that if it should be destroyed by fire it would not be replaced, and their advances would be irretrievably lost.

It may be said generally, that while the earlier cases show a disposition to restrict an insurable interest to a clear, substantial, vested pecuniary interest, and to deny its applicability to a mere expectancy without any vested right, the tendency of modern decisions is to relax the stringency of the earlier cases and to admit to the protection of the con-

tract whatever act, event or property bears such a relation to the person seeking insurance that it can be said with a reasonable degree of probability to have a bearing upon his prospective pecuniary condition. An insurable interest is *sui generis* and peculiar in its texture and operation. It sometimes exists where there is not any present property— any *jus in re* or *jus ad rem.* Yet such a connection must be established between the subject matter insured and the party in whose behalf the insurance has been effected as may be sufficient for the purpose of deducing the existence of a loss to him from the occurrence of an injury to it. May on Insurance, § 76.

Not only the absolute owner, but any one having a quali-fied interest in the property insured, or even any reasonable expectation of profit or advantage to be derived from it, may be the subject of insurance, and especially if it be founded in some legal or equitable title. Angell on Fire & Life Insurance, § 56. Any interest which would be recog-nized by a court of law or equity is an insurable interest. In *Lucerna* v. *Crawford,* 3 Bos. & Pul. (Day's ed.), 75, LAWRENCE, J., says that contracts of insurance are "appli-cable to protect men against uncertain events which may in any wise be of disadvantage to them; not only those persons to whom positive loss may arise by such events occasioning the deprivation of that which they may possess, but those also who, in consequence of such events, may have intercepted from them the advantage or profit which, but for such events, they would acquire according to the ordi-nary and probable course of things. * * That a man must somehow or other be interested in the preservation of the subject matter exposed to perils, follows from the nature of the contract, * * but to confine it to the protection of the interest which arises out of property is adding a restriction to the contract which does not arise out of its nature. * * A man is interested in a thing to whom advantage may arise or prejudice happen from the circum-stances which may attend it."

A commission merchant to whom the cargo of a vessel is

consigned for sale has an insurable interest in his expected commissions, and may insure the same while the vessel is on her voyage. *Putnam* v. *Mercantile Insurance Co.*, 5 Met., 386. In *Warren* v. *Davenport*, 31 Iowa, 464, it is held that shareholders may insure their interest as such in the property of the corporation. Rent reserved in the lease of a house is insurable. *Leonarda* v. *Phœnix Assurance Co.*, 2 Rob. (La.,) 131. In *Wilson* v. *Jones*, L. R., 2 Exchequer, 139, it is held that a shareholder in the Atlantic Telegraph Company had an insurable interest in the profits resulting from a successful attempt to lay an ocean cable.

When the respondent contracted with the petitioners, for money paid to it by them, to pay them a fixed sum if fire should destroy the property, it was not simply a wager that an event would or would not happen, which event could not possibly affect the pecuniary condition of the petitioners; it must certainly and directly inflict loss upon them. I think that the petitioners had an insurable interest, and that their contract offends no rule of public policy.

Again, it is claimed that the petitioners, by bringing an action at law upon the policy, elected to treat it as embodying the real contract, and are estopped from claiming the contrary. The respondent, knowing what the contract was, made and delivered to the petitioners an inaccurate statement of it in writing, knowing that they received and accepted it in the belief that it had the meaning of the oral contract. The petitioners therefore had the right to assume that the respondents would not under such circumstances interpose their mistake between themselves and payment, and are not for error in this assumption to be barred from the reformation of the instrument. *Woodbury Savings Bank* v. *Charter Oak Insurance Co.*, 31 Conn., 517.

Subsequent to the destruction of the insured building in August, 1875, the bondholders secured by the first mortgage of the New Haven, Middletown & Willimantic Railroad Company foreclosed and were incorporated under the name of the Boston & New York Air Line Railroad Company. This corporation paid to the petitioners the amount of their

individual advancements for the preservation of the property formerly in their keeping as trustees, and thereupon in October, 1876, they released and quit-claimed to that corporation all right, title and interest which they had in or to the railroad formerly owned by the New Haven, Middletown & Willimantic Railroad Company, and all things appurtenant thereto; and assigned therewith their claim under the policy in question.

The respondent insists that the petitioners have forfeited all right, either to a reformation of the contract or to be indemnified for any loss under it, for the reason that if the respondent had issued the policy as the petitioners now claim that it should have been issued, and if they had at the date thereof such interest in the building as they now claim they then had, the respondent upon payment of a loss under such policy would have had the right to be subrogated to the claims, rights and securities held by the petitioners; and they say that the petitioners have cut off such right of subrogation by their release and assignment.

The petitioners had a direct pecuniary interest in preserving the building; from their own funds they purchased from the respondent its agreement to pay them money not exceeding a specified amount, if within a specified time the property in which they had such interest should be destroyed or injured by fire. This contract was not and was not intended to be one of liability for the destruction of or injury to the property to any one who might be the owner thereof; but it was personally with the petitioners upon their named interest in it.

It is true that after the policy issued both the owners of the property and the respondent owed a duty to the petitioners; the former could not regain possession until payment of advances; the latter must pay them money if fire occurred; but they came thereby into no privity; these were wholly independent obligations; each is as if the other did not exist; no loss could be inflicted upon either by failure of the other to perform; no advantage could accrue from performance. The advances not having been repaid

to the petitioners at the time of the fire, they then held the precise interest which originally supported the policy; the liability of the respondent became fixed and absolute at that moment; nothing which the owners thereafter did in the matter of re-payment of advances could affect its obligation; and if it should so result that the owners should repay to the petitioners their advances and the respondent should pay the sum expressed in the policy it will only have performed a contract into which it voluntarily entered upon adequate consideration; no rights accrued to it except such as are specified; no rule of law or equity gives to it, in addition to the premium, the right to receive back from any person the sum paid under it.

I think the prayer of the petition should be granted.

In this opinion GRANGER, J., concurred.