WOODBURY SAVINGS BANK AND BUILDING ASSOCIATION *vs.* THE
CHARTER OAK FIRE AND MARINE INSURANCE COMPANY.

An insurance policy purported to insure *S* upon certain property described as his;
the amount, in case of loss, to be paid to *W*. In an action of assumpsit on the
policy, brought by *W* against the insurance company, it was held that parol evi-
dence was not admissible to show that *W* was the real party to the contract,
that the defendants had agreed to insure a mortgage interest held by him and
undertook to do so by the policy, and that they contracted with him by the name
of *S*.

ASSUMPSIT on a policy of insurance. The material part of
the policy was as follows:—

"Charter Oak Fire and Marine Insurance Company, Hart-
ford, Conn., $3,000. By this policy of insurance the Charter
Oak Fire and Marine Insurance Company, in consideration of
sixty dollars, to them in hand paid by the assured hereinafter
named, the receipt whereof is hereby acknowledged, do insure
Smith, Beecher & Beers, of Naugatuck, Conn., against loss or
damage by fire, to the amount of three thousand dollars; viz:
$1,000 on their 2½ story frame building with one story
addition, known as a carriage and wheel shop, and now unoc-
cupied except as a storehouse, and situated in said Nauga-
tuck, Conn.; $1,500 on steam engine and boiler therein;
$300 on machinery and tools therein; $200 on carriage
wheels finished and in process, and materials for making the
same, contained therein. Reference had to survey on file at

this office. Payable in case of loss to the Woodbury Savings Bank and Building Association."

After setting out the policy in their declaration, the plaintiffs alleged that, on the 17th day of August, 1857, (the date of the policy,) they were the mortgagees of the property described in the policy and had an insurable interest therein, and that it was the intention of the plaintiffs and defendants to recognize this interest, and to insure the same for the benefit of the plaintiffs by the policy, and at the expense of the plaintiffs, and that the defendants gave and the plaintiffs received the policy for the express purpose of insuring that interest for the benefit of the plaintiffs, and that the plaintiffs paid the sum of sixty dollars, being the amount of the premium for said insurance, the defendants being fully informed of the state of the title to the property insured and all other circumstances relating to the same, the plaintiffs having communicated all the information in their possession relating thereto, and the defendants by their agents having fully examined the same.

The case was tried to the jury, upon the general issue with notice. On the trial it appeared and was not denied that the plaintiffs had a mortgage interest in the property insured, by a mortgage from the owners, Smith, Beecher & Beers, to a greater amount than the insurance, and that they had no other interest in it. After proving the policy the plaintiffs offered parol evidence to prove that the defendants, by their authorized agent, agreed with the plaintiffs to insure the plaintiffs' mortgage interest in the premises, and not the premises themselves, or any other interest in the same; that the defendants' agent first applied to the plaintiffs at the town of Woodbury, some twelve miles distant from the premises, to effect an insurance upon their interest, and that they informed the defendants of the exact nature of their interest, that it was a mortgage, and what the mortgage covered, that the mortgagors had assigned and were in insolvency, that the equity of redemption was in dispute between the trustees of two insolvent companies, and that the title to the premises was in dispute at law, and was so complicated that the plaintiffs could tell nothing about it;

but that the plaintiffs had an undisputed mortgage interest, which they wished to insure, and that if the defendants by their agent would examine the premises and inquire into the title and condition of the same to the satisfaction of the defendants, and would make a valid policy to insure the plaintiffs' mortgage interest, they would pay them the premium therefor ; and that the defendants' agent afterwards examined the premises to his satisfaction, and inquired into the title in the absence of the plaintiffs ; and that the defendants thereupon, with full knowledge of all the facts, agreed with the plaintiffs to insure their mortgage interest, in the name of Smith, Beecher & Beers, for the sole benefit of the plaintiffs, and that it was agreed between the parties to insure the plaintiffs, as Smith, Beecher & Beers, on the plaintiffs' interest only, and in the form of the policy set forth in the declaration. This testimony was offered by the plaintiffs, not for the purpose of varying, explaining or altering the written contract, but for the sole purpose of showing that the parties agreed, for the purposes of the contract of insurance, to insure the property of the plaintiffs in the name of Smith, Beecher & Beers. To the admission of the testimony the defendants objected, on the ground that it would vary, control or alter the written contract of the parties ; but the court admitted the same for the sole purpose for which it was offered, and not for the purpose of varying, explaining, controlling or altering the written contract of insurance. It was proved, and not denied, that the plaintiffs paid the premium mentioned in the policy to the defendants, and that no other party but the plaintiffs had any thing to do with, or any interest in, the contract of insurance.

The jury having returned a verdict for the plaintiffs, the defendants moved for a new trial.

*Hubbard*, with whom was *Ransom*, in support of the motion.

The contract is made by its terms with Smith, Beecher & Beers. They are shown to be living persons, not mere assumed names. Parol evidence therefore, that the contract was made with these plaintiffs and not with them, was wholly

inadmissible as varying the written contract. There was no ambiguity about the contract. Its natural import could not be mistaken, and required no explanation. It is true that the court admitted the evidence not to vary the written contract but to show that the defendants agreed to insure the plaintiffs as Smith, Beecher & Beers ; but it is perfectly manifest that it must have had the effect, if any, to vary the written contract. The evidence that the mortgage interest of the plaintiffs was intended to be insured and not the property itself, was also for the same reason inadmissible. *Rossiter* v. *Marsh*, 4 Conn., 196. *Stackpole* v. *Arnold*, 11 Mass., 27. If there was a mistake in the policy the plaintiffs should have gone into chancery. A court of law can take the contract only as it stands.

*Kellogg* and *Cothren*, contra.

The evidence was properly admitted for the purpose for which it was offered. The defendants objected to it on the ground that it would vary, explain or alter the written contract, and the court refused to admit it for that purpose ; and the defendants can not complain on this point. It was admitted solely for the purpose of showing that these parties agreed to insure the plaintiffs' interest in the premises described, in the name or description of Smith, Beecher & Beers, and that the contract made was between the plaintiffs and the defendants in that form. The parties agreed to treat this interest by that name or style in the contract. *Peck* v. *New London Mutual Ins. Co.*, 22 Conn., 575, 584. *Howard Ins. Co.* v. *Bruner*, 23 Penn., 50. The suit is properly brought in the name of these plaintiffs. No other party could bring it. The loss is made payable to them on the face of the policy. 2 Phillips on Ins., 595. *Lazarus* v. *Commonwealth Ins. Co.*, 19 Pick., 81. Even if the original contract had been made with Smith, Beecher & Beers, this suit is properly brought in the name of the plaintiffs. But the original contract being with the plaintiffs, it differs widely from the case of a mortgagor's procuring an insurance on the premises themselves, and making the loss payable to the mortgagee, as is often done.

No party but the plaintiffs can bring this suit.  *King* v. *State Mutual Fire Ins. Co.*, 7 Cush., 5.  *Grosvenor* v. *Atlantic Fire Ins. Co.*, 17 N. York, 393.  A mortgage interest in buildings may be insured without a specific description of the interest, or, in other words, by a description of the buildings only.  It is not necessary to set out in the policy whether the interest insured is a mortgage, or an estate for life, or in fee.  *King* v. *State Mutual Ins. Co.*, 7 Cush., 1.  1 Phillips on Ins., 168.  *Tyler* v. *Ætna Fire Ins. Co.*, 12 Wend., 507.  The jury have found that the plaintiffs fully disclosed their interest to the defendants, before and at the time the contract of insurance was made.  They find, in fact, that the defendants first applied, through their agent, to the plaintiffs, for the privilege of insuring that specific interest.  There was no fraud, misrepresentation or concealment.  The interest specified in the mortgage was the only one ever mentioned by the parties to this contract of insurance:

SANFORD, J.  In this case the plaintiffs claim to recover upon the policy of insurance recited in their declaration.  The instrument is in the usual form.  It is on its face a written contract between the defendants and " Smith, Beecher & Beers, of Naugatuck, Connecticut," in which the defendants acknowledge the receipt of the stipulated premium from the " assured hereinafter named," and by which the defendants insure the said Smith, Beecher & Beers, against loss or damage by fire, to the amount of $3,000, on their two and a half story frame building, &c., situated in said Naugatuck.  The plaintiffs held a mortgage on the property described in the policy, and upon the trial they sought to show that the contract of insurance was in fact made with them, instead of Smith, Beecher & Beers, and that they alone, as original promisees, were entitled to all the benefits of the insurance.  For that purpose they introduced parol evidence of a cotemporaneous oral agreement between them and the defendants, by which the defendants undertook to insure the plaintiffs' mortgage interest in the name of Smith, Beecher & Beers, for the sole benefit of the plaintiffs, and to insure the plaintiffs as Smith, Beecher

& Beers, on the plaintiffs' interest only, " *and in the form of the policy set forth in the declaration.*" At the same time the plaintiffs disclaimed any intention by such evidence to vary, explain, or alter the written instrument, and claimed only " to show that the parties agreed, for the purposes of said contract of insurance, to insure the property of the plaintiffs in the name of Smith, Beecher & Beers." That is to say, the plaintiffs, while recognizing the rule of law that parol cotemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument, undertook, by the proof of a cotemporaneous oral agreement, not indeed to substitute other words or stipulations for those contained in the writing, but only to give to those words and stipulations a signification and effect, entirely different from and inconsistent with, their ordinary, natural and legal import.

There is no rule more firmly imbedded among the elementary principles of our jurisprudence, than the one already alluded to, but more fully expressed by Mr. Starkie, in his Treatise on the Law of Evidence, vol. 3, p. 1002, that " where the terms of an agreement are reduced to writing, the document itself, being constituted by the parties as the true and proper expositor of their admissions and intentions, is the only instrument of evidence which the law will recognize, so long as it exists, for the purposes of evidence."

It is equally well settled also that the terms of every written instrument are to be understood in their plain, ordinary and popular sense, and that where the language of an instrument has a settled legal construction, parol evidence is not admissible to contradict that construction. 1 Greenl. Ev., §§ 277, 278.

In view of these elementary principles we think the admission of the parol evidence can not be vindicated. The policy is the foundation of the plaintiffs' claim. By that, and by that alone, the defendants assumed their obligations. They say, " By this policy of insurance the Charter Oak Fire and Marine Insurance Company do insure," &c. It is expressed in plain, unambiguous language, and no doubt or difference of opinion has been expressed, or can be entertained, in regard to

the meaning or effect of any of its provisions. It contains no stipulation with, or promise, to the plaintiffs, or any one in their behalf. Their name is indeed mentioned in the instrument, not however as a party to the contract, but only as an appointee of Smith, Beecher & Beers, to receive the money which might become due to them from the insurers on the policy. So that the only inquiry in this part of the case is, whether a plain, explicit and complete written contract with Smith, Beecher & Beers, to insure them against loss by the destruction of their property, can be turned into a contract with the Woodbury Savings Bank and Building Association, to insure their mortgage interest in said property, not by the substitution of the oral for the written stipulations in the policy, but by proof of a cotemporaneous oral agreement between the parties, that, for the purposes of that transaction, Smith, Beecher & Beers should be understood to mean the Woodbury Savings Bank and Building Association—that the insurance of Smith, Beecher & Beers against loss or damage by fire on their two and a half story frame building, &c., should be understood to mean the insurance of the Woodbury Savings Bank and Building Association, against loss, &c., on their interest in said building as mortgagees thereof—that the express promise of the defendants to make good unto the said Smith, Beecher & Beers, their executors, &c., all such loss or damage not exceeding the sum insured, as should happen by fire to the said building, &c., should be understood to mean, a direct promise to make good unto the Woodbury Savings Bank and Building Association, all such loss or damage as should happen to their mortgage interest in said building, &c., by the burning thereof—and that the proviso in the policy, that said loss or damage should be estimated according to the true and actual value of said property at the time the same should happen, should be taken to mean, that said loss or damage should be estimated according to the true value of the plaintiffs' interest, &c. In short, is it allowable to prove an oral agreement between the parties, that the language and stipulations of a cotemporaneous written contract shall, for the purposes of that transaction, have any other than their natural, ordinary

Woodbury Savings Bank *v.* Charter Oak Ins. Co.

and legal signification? We think it is not. Two contracts, the one in writing and the other in parol, made between the same parties, at the same time, in regard to the same subject matter, and for the same purposes, but variant in their respective stipulations, can not stand and be enforced together in the same suit in a court of law. In such a case the law wisely determines to rely upon the written instrument alone, as the true and only safe expositor of the intention and final understanding and agreement of the contracting parties.

The plaintiffs' disclaimer could not render the evidence admissible, because the oral contract which they proposed to prove, was when made intended to operate directly upon the written instrument, varying and controlling its effect, and in no other way could operate at all.

If a written contract be made for the conveyance of *black-acre*, may it be proved by parol that *white-acre* instead of *black-acre* was the property really bargained for and intended to be conveyed, and that the parties made a cotemporaneous oral agreement that, for the purposes of that transaction, *black-acre* should be understood to mean *white-acre* ? And would the party's disclaimer of an intention to affect the written instrument render such evidence admissible? In that case as in this, the purpose of the party would not be to substitute the words or terms of the oral agreement in the place of those employed in the written contract, but only to make *black* in that contract signify *white,* and nothing else.

In the case of *Barnett* v. *Union Mutual Fire Ins. Co.,* 7 Cush., 175, the by-laws of the company provided that the insurance should be void unless all prior insurances were mentioned in the policy, and, it appearing on the trial that a prior insurance not mentioned in the policy in fact existed, the plaintiffs offered parol evidence that the fact was made known to the defendants before the issuing of the policy, that both parties expected that such prior insurance would be continued, and that the defendants made out the policy, and delivered it to the assured, who supposed that it was made according to the intention and expectation of the parties, and did not know that the prior insurance was not mentioned in

the policy until after the loss occurred. Fletcher, J., said: " In all cases where a sensible construction can be put upon the policy without the aid of parol evidence, the effect of such evidence is materially to vary the legal construction of the contract of the parties. The true meaning of the rule excluding parol evidence is, that such evidence shall never be used to show that the intention of the parties was directly opposite to what their language expresses, or substantially different from any meaning that the words they have used upon any construction will admit or convey. A court of law must act on the agreement as it is."

In the case of *Grant* v. *Naylor*, 4 Cranch, 224, Grant addressed a letter of credit to John and Joseph Naylor & Co., in which he says:—" I will guarantee their" (Hacket & Grant's) " engagements, should you think it necessary for any transaction they may have with your house." The letter was designed for John and *Jeremiah* Naylor, was delivered to them, and upon the faith of it they sold goods to Hacket & Grant on credit. Hacket & Grant failed, and John and Jeremiah Naylor brought their action on the guaranty in the letter against Grant, and offered parol evidence to prove that the letter was intended for, and was an assumpsit to them. The court held the evidence inadmissible, and Marshall, C. J., said : " In such a case the letter itself is not a written contract between Grant, the writer, and John and Jeremiah Naylor, the persons to whom it was delivered. To admit parol evidence to make it such a contract, is going farther than courts have ever gone, where the writing is itself the contract, and not evidence of a contract, and where no pre-existing obligation bound the party to enter into it."

So we say in this case, the policy of insurance is not a contract between the insurance company and the Woodbury Savings Bank & Building Association, and parol evidence is not admissible in a court of law to make it one.

The case of *Peck* v. *New London Mutual Ins. Co.*, 22 Conn., 575, was cited as an authority for the admission of this evidence. In that case the plaintiffs procured a joint insurance on a bark-mill owned by one of them, and personal property

in the mill owned by the other, in severalty, as if they were the joint owners of all the property, and in the declaration they alleged that they were the owners of the property insured ; which allegation the court held equivalent to an averment of joint ownership. Upon the trial the plaintiffs offered parol evidence that the facts in relation to their title were fully stated by the assured to the defendants' agent, who thereupon proposed a joint insurance, and filled up the policy accordingly ; the plaintiffs accepting it in that form, and paying therefor the stipulated premium. And this court held the evidence admissible, in proof of the allegation of joint ownership, as it tended to prove an agreement between the plaintiffs to unite their several interests, and treat the whole, for the purposes of that insurance, as their joint property ; and admissible also to estop the defendants from setting up the objection that the plaintiffs were not joint owners. It was the case of an agreement between the respective owners of the property, for the purposes of that insurance, to unite in the payment of the premium, and participate in the benefits of the security ; an entirely fair and valid contract as between themselves, and binding too upon the defendants, because made at their suggestion and with their assent and approbation. The oral contract stood well with the written one, and in no way affected the construction or operation of the policy, or the interests of the defendants.

Some other questions were made by the counsel, but we prefer to waive the consideration of them for the present, and advise the superior court to grant a new trial for the reasons already stated.

In this opinion the other judges concurred.

New trial advised.