THE MERIDEN SAVINGS BANK vs. THE HOME MUTUAL FIRE INSURANCE COMPANY.

A policy of insurance on property mortgaged to a savings bank was, by a memorandum on the policy, made payable to the savings bank to the amount of its mortgage. A collateral agreement was also made by the insurance company with the savings bank, that all policies which had been or might be issued by the insurance company and assigned or made payable to the savings bank, should not, as to the interest of the latter, be invalidated by any act or neglect of the mortgagor or owner, that the savings bank should pay for any increase of hazard, and that on payment being made to the savings bank the insurance company should be entitled to all the securities held by the savings bank. Both the policy and the agreement were under seal. The premium, constituting the consideration of the policy, was paid by the insured. *Held :*

1. That the savings bank, not being a party to the policy, could not sue upon it alone, even though the promise was made for its benefit.
2. That the two instruments together constituted a contract between the insurance company and the savings bank, by which the latter became privy to the promise of the insurance company contained in the policy, to pay the loss to it; and that a suit at law could be maintained by the savings bank in its own name on that promise.

If the savings bank had sued in the name of the mortgagor, the suit would have had to be brought on the policy alone; in which case there would have been a difficulty in its availing itself of the agreement of the insurance company that the acts of the mortgagor should not invalidate the policy.

It would be no objection that, if the savings bank could sue in its own name upon the contract in connection with the policy, the insurance company might be subjected to two suits for the same loss. The company had voluntarily placed itself in this position by making two contracts with two different parties relative to the same subject matter.

ASSUMPSIT against an insurance company on its contract
to pay the loss upon a policy of fire insurance, to the plain-
tiffs; brought to the Superior Court. Demurrer by the
defendants, and reservation upon the pleadings for the
advice of this court. The case is sufficiently stated in the
opinion.

The case was argued at a former term by *R. Hicks*, in
support of the demurrer, and *O. H. Platt* and *J. P. Platt*
contra. The judges having ordered a re-argument, it was
argued at the present term by *R. Hicks* for the defendants,
and *J. P. Platt* for the plaintiffs.

CARPENTER, J. This is an action on a fire insurance
policy issued to the owner of the property, the loss being
payable to the mortgagees, who bring the action in their own
name. The declaration contains two counts. The first is
on the policy alone, and is in the usual form, except that it
is not brought by the insured. The second count recites
the policy, and also a contract with the plaintiffs relating to
the policy, known as a mortgage agreement. That agree-
ment is as follows: "In consideration of one dollar
received to its full satisfaction, the Home Mutual Fire In-
surance Company, of Stafford Springs, doth hereby agree
with the Meriden Savings Bank, of Meriden, Connecticut,
that all policies of insurance which have been or may be
issued by the said Home Mutual Fire Insurance Company,
and which, with its consent, have been or may be assigned,
or losses under which are made payable to the said Meriden
Savings Bank, as mortgagee, shall not, as to the interest of
the said mortgagee only therein, be invalidated by any act
or neglect of the mortgagor or owner of the property in-
sured, by any sale or alienation, by non-occupation or occu-
pation of the premises for purposes more hazardous than
are permitted by the policy. And it is further agreed be-
tween the parties hereto, that the mortgagee shall notify
said company of any change of ownership or increase of
hazard which shall come to its knowledge, and that every
increase of hazard not permitted by the policy to the mort-

gagor or owner shall be paid by the mortgagee on reasonable demand, according to the established scale of rates, for the use of such increased hazard during the current year. And it is further agreed between the parties hereto, that whenever the said Home Mutual Fire Insurance Company shall pay to the said mortgagee any sum for loss under any policy assigned as above, and shall claim that, as to the mortgagor or owner, no liability therefor existed, the said Home Mutual Fire Insurance Company shall at once be legally subrogated to all the rights of the mortgagee under all the securities held as collateral to the mortgage debt to the extent of such payment, or at their option may pay to the mortgagee the whole principal due or to grow due on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and all other securities held as collateral to the mortgage debt; but no such subrogation shall impair the right of the mortgagee to recover the full amount of claim."

This contract was signed and sealed by the president and secretary of the insurance company. The declaration then avers a performance of all the conditions of the policy by the insured in the usual form.

The defendants demurred, and the case is reserved for the advice of this court. We will consider only the second count, as the plaintiffs claim nothing under the first.

The second count is not on the policy, which is a contract with the mortgagor, but is on the contract made with the plaintiffs. That the two instruments together constitute a contract with the plaintiffs is hardly denied. The controversy relates to its nature and validity.

The defendants claim that it is simply a waiver of certain conditions contained in the policy. The plaintiffs claim that it is an independent contract of insurance with them. We are inclined to take a somewhat different view of it from that taken by either of the parties. It is something more than a waiver. The policy contains a promise from the defendants upon a consideration moving from Guiott, the mortgagor, to pay to the plaintiffs, in case of loss, the

amount of their mortgage. As the plaintiffs are not a party to the policy there is no privity (in respect to it alone) between them and the defendants; so that they could not sue on the policy alone, it being a sealed instrument, even though it may be that the promise was made for their benefit. *Woodbury Savings Bank* v. *Charter Oak Fire and Marine Ins. Co.*, 29 Conn., 374. But by another instrument under seal, referring to the policy, (and the two instruments must be construed together,) the defendants agree, in consideration of one dollar, and in further consideration that the plaintiffs are, in a certain contingency, to give notice to the defendants and are to pay extra premiums, and, in a certain other contingency, are to convey the mortgage debt, when paid by the defendants, and all securities held by them, to the defendants, to be held by them as a valid claim against the mortgagor, that certain enumerated acts by the mortgagor or owner of the property, which acts are prohibited by the policy, shall not, as to the interest of the mortgagees only, invalidate the policy.

Now the legal effect of this arrangement is to bring the mortgagees into contract relations with the insurers. The mortgagees thereby become privy to the promise to pay the loss to them, and thereby the obstacles to a maintenance of a suit by them on that promise—want of privity, and want of a consideration moving from them—are removed. *Hastings et al.* v. *Westchester Fire Ins. Co.*, 73 N. York, 141. We do not however, at this time and in this case, go quite so far as that case seems to go, and hold that the mortgage agreement is a distinct and independent contract of insurance. It is rather an agreement relating to an existing policy, by which certain conditions are dispensed with, and certain privileges are secured to the insurers which they would not otherwise have, and the plaintiffs are made a party to the contract of insurance.

The mortgage contract attached to this policy distinguishes this case from the *Woodbury Savings Bank* v. *Charter Oak Insurance Co.*, *supra*, and vests in the mortgagees a legal as well as an equitable interest in the promise to pay the mort-

gagees contained in the policy. To describe the relations of the parties to each other more specifically, we should say there is but one policy and that runs to the mortgagor; he is the insured, the premiums were paid by him, the lien for assessments is on his property, he is personally liable for the assessments, and he is entitled to the remainder of the policy after the mortgagees are paid. The defendants agreed in case of loss to pay $1,000. Of that sum, and as a part of it, they agreed to pay the amount of the plaintiffs' claim to the plaintiffs, and voluntarily placed the plaintiffs in a position to bring a suit on that promise in their own names.

But the defendants insist, notwithstanding the mortgage agreement, that no suit can be brought except in the name of the mortgagor. That claim mistakes the position of the parties. For all the purposes of this case we may concede that if a suit is to be brought on the policy alone it must be brought in the name of the mortgagor. But this suit is not brought on the policy; it is brought on a contract with the plaintiffs, of which contract the policy forms a part. On this contract no suit can be brought by the mortgagor because he is not a party to it, and it was not made for his benefit. If he should bring a suit on the policy it is very clear that he could not set up the agreement with the plaintiffs as an answer to any defence that might be set up, and for the reason that he is a stranger to that contract. If the plaintiffs should bring a suit in the name of the mortgagor that suit must be brought on the policy alone, because that is the only contract he has made; and in such a suit it is difficult to see how the plaintiffs could avail themselves of the mortgage agreement. Indeed we can hardly conceive how it is possible, in case any of the grounds of defence enumerated in the mortgage agreement are relied on, for the plaintiffs to avail themselves of that agreement except by bringing a suit in their own names as they have done.

But the defendants insist that this being a mutual company, it cannot insure the plaintiffs on terms differing from the terms on which policies issue to other members. The

view we have taken of this case is not inconsistent with that position, therefore we have no occasion to controvert it.

For the same reason the defendants say that the company has no power to waive any of the conditions in the policy issued to Guiott and thereby place this policy on a different footing from the others. We have no occasion to consider that question now, for it does not arise on this demurrer. The declaration alleges "that the said John Guiott kept, observed, performed and fulfilled all the conditions, stipulations and things contained in said writing or policy of insurance on his part to be observed, fulfilled and kept." The demurrer admits that entire allegation to be true, so that, as the case stands before us, the company issued a policy to John Guiott, the building burned, whereby the loss became payable, the insured had observed all the conditions and stipulations of the policy, and the company has no defence. Now if the suit is properly brought in the name of the plaintiffs, as we think it is, no reason appears on the face of the declaration why the defendants should not pay the loss as agreed.

The defendants further say that if this suit may be maintained, they may be vexed and harassed by two suits on the same contract. We reply that the defendants have made two contracts with two different parties relating to the same subject matter. They have voluntarily placed themselves in a position in which they are subject to two suits. Should there be two suits they have no cause of complaint.

For these reasons we are of the opinion that the declaration is sufficient, and the Superior Court is so advised.

In this opinion the other judges concurred.

[NOTE. This case was heard some time after the regular term, when all the judges were present.]