THE COLLINSVILLE SAVINGS SOCIETY vs. THE BOSTON IN-
SURANCE COMPANY.

First Judicial District, Hartford, March Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The insertion, in a Connecticut standard policy of fire insurance, of
the " open mortgage clause "—whereby the loss, if any, becomes
payable to a specified mortgagee as his mortgage interest may ap-
pear—does not make him a party to the contract nor entitle him
to participate in an adjustment of the loss by appraisers, to whom
it has been submitted by the property-owner and insurer pursuant
to the terms of the policy. Under such circumstances the sum
awarded by the appraisers and accepted by the owner, even if cal-
culated upon an erroneous basis, is obligatory upon the mortgagee
without regard to his concurrence or ratification.
Under the " union mortgage clause," however, it seems that the mort-
gagee acquires rights of his own which entitle him to independent
and distinct protection.

Argued March 7th—decided April 20th, 1905.

ACTION by a mortgagee to recover the amount of a loss
under a policy of fire insurance, brought to the Superior
Court in Hartford County and tried to the court, *George W.
Wheeler, J.;* facts found and judgment rendered for the
plaintiff for $849.32, and appeal by the defendant. *Error
in part.*

One Woodruff was the owner of a lot of land in New
Hartford with a building standing thereon. These premises
were subject to a mortgage to the plaintiff for $10,000.
Woodruff caused the building to be concurrently insured in
five companies for the total sum of $9,000. The defendant
wrote $2,000 of this amount. The policies were in the form
of the Connecticut standard policy, had stamped thereon
the so-called reduced rate or eighty per cent. clause, and bore
the indorsement, " loss, if any, payable to the Collinsville
Savings Society as their mortgage interest may appear."
The building having been damaged by fire, the defendant
and Woodruff made a submission in writing to two appraisers

and an umpire in the manner prescribed in the policy. This submission, whose result the policy provided should be final, left to the determination of the appraisers and umpire the two factors from which the defendant's liability could be ascertained by a mathematical calculation, to wit, "the sound value" of the property damaged and the fire damage. It also provided that in determining the sound value and the loss upon the property insured, the appraisers should "make an estimate of the actual cash cost of replacing or repairing the same, or the actual cash value thereof, at and immediately preceding the time of the fire : and in case of depreciation of the property from use, age, condition, location, or otherwise, a proper deduction shall be made therefor." The appraisers thereupon made their award, determining therein that the sound value of the property was $17,500 and the fire loss $3,571.94. The sound value was arrived at by estimating the cost of construction of a new building and deducting therefrom the depreciation arising from the length of time the burned building had been built and the use to which it had been put. Upon this basis an apportionment was correctly made and the defendant's liability ascertained to be $510.28. Subsequently, proof of loss having been made by Woodruff, the defendant made out its sight draft for said sum of $510.28, payable to the joint order of Woodruff and the plaintiff, and attached thereto a receipt to be signed by said payees and to accompany the draft when presented for payment. Woodruff thereupon, with knowledge of the result of the appraisal, indorsed said draft and signed said receipt, which recited that the amount of the draft was received of the defendant in full of all claims and demands for loss and damage by reason of its said policy and the fire in question. The plaintiff having been presented with certain, at least, of the drafts and receipts made out in settlement of said loss, thereupon notified the defendant that it would not accept the award, and subsequently brought this action. The plaintiff was not a party to said submission, nor did it participate or acquiesce in the same or in the proceedings thereunder. Woodruff has

never objected to or complained of the award. On the day upon which the plaintiff notified the defendant, as stated, that it refused to recognize the award, it obtained from Woodruff an assignment in writing of all his right, interest and claim against the defendant by reason of said loss, and forthwith gave notice thereof to the defendant. The evidence disclosed no suggestion of bad faith on the part of either the defendant or Woodruff.

The trial court ruled in favor of the plaintiff's contention that it was not concluded by said award, and also that the rule adopted by the appraisers for the determination of sound value was not the correct one. It further found that by reason of a recent depreciation in values in the vicinity, the result reached by the appraisers was too large. It thereupon proceeded upon independent evidence to ascertain the market value, and fixed such ascertained value, to wit, $10,000, as the sound value. The plaintiff made no complaint of the award as to the fire damage, and the court made the same finding in that regard that the appraisers had made. Upon the basis of these conclusions the court computed the defendant's liability under its policy to be $793.76, for which sum, with interest thereon from August 10th, 1903, making in the whole $849.32, judgment was rendered. The defendant does not contest its liability to pay the amount which results from an apportionment of the loss upon the basis of the award, but stands ready to pay that sum.

Other facts, not pertinent to the conclusions of this court, are not stated.

*Charles E. Gross,* for the appellant (defendant).

*Theodore M. Maltbie,* for the appellee (plaintiff).

PRENTICE, J. The plaintiff concedes that by the assignment from the property-owner of his claim under the policy sued upon it has not, under the facts of this case, acquired any right which it did not previously have, save the right to

maintain in its own name an action against the defendant. That assignment may therefore be disregarded.

If, as the defendant contends, the plaintiff is bound by the award made under the submission entered into by the defendant and the property-owner, there is error in this case. The court ruled against this contention, and rendered judgment in favor of the contrary claim of the plaintiff—that it was not bound by said award. Two reasons are urged in support of the plaintiff's position, to wit: (1) that it was not a party to the submission and has never acquiesced in or ratified it; and (2) that the appraisers applied an erroneous rule of law in their determination of the sound value of the property insured.

The policy, whose provisions prescribe and define the defendant's liability, is the Connecticut standard policy, having indorsed thereon the so-called reduced rate or eighty per cent. clause, and also the following: " Loss, if any, payable to the Collinsville Savings Society as their mortgage interest may appear." Said society is in no other way or place, either specifically or descriptively, mentioned in the policy or its indorsements, save as it is provided in the body of the policy that " if, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee, or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto."

The indorsement above recited designating the payee of any loss, which for the purposes of distinction has been called the " open mortgage clause," did not bring the plaintiff and defendant into contractual relations with each other either directly or through an assignment of the policy; neither did the plaintiff thereby become a person or corporation whose property or property interests were insured under the policy. The contract for idemnity remained one exclusively between the defendant and the property-owner. The

plaintiff was only a conditional appointee of the latter. As such appointee it was entitled to receive so much of any sum that might become due under the policy as did not exceed its interest as mortgagee, and nothing more. Such is the accepted rule in this State and, with few possible exceptions, elsewhere. *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*, 29 Conn. 374; *Meriden Savings Bank* v. *Home Ins. Co.*, 50 id. 396; *Franklin Savings Institution* v. *Central M. F. Ins. Co.*, 119 Mass. 240; *Baldwin* v. *Phœnix Ins. Co.*, 60 N. H. 164; *Biddeford Savings Bank* v. *Dwelling-House Ins. Co.*, 81 Me. 566; *Magoun* v. *Firemans' Fund Ins. Co.*, 86 Minn. 486; *Hartford Fire Ins. Co.* v. *Olcott*, 97 Ill. 439; *Williamson* v. *Michigan F. & M. Ins. Co.*, 86 Wis. 393; *Van Buren* v. *St. Joseph C. V. F. Ins. Co.*, 28 Mich. 398; *Martin* v. *Franklin Fire Ins. Co.*, 38 N. J. L. 140; *Grosvenor* v. *Atlantic Fire Ins. Co.*, 17 N. Y. 391; *Syndicate Ins. Co.* v. *Bohn*, 65 Fed. Rep. 165. It is universally held that a policy so indorsed may become forfeited, and the mortgagee deprived of all protection thereunder, by any act or default of the property-owner before loss. *Moore* v. *Hanover Fire Ins. Co.*, 141 N. Y. 219; *Baldwin* v. *Phœnix Ins. Co.*, 60 N. H. 164.

There is another stipulation appearing in or appended to policies issued to property-owners, and designed to protect the interest of mortgagees, which it is important to notice. This has been variously denominated the "mortgagee clause," and the "union mortgage clause." It is embodied in the standard policies in some States, and is frequently used as a rider upon policies in other States. It embraces the provision, in substance, that no act or default of any person other than such mortgagee or his agent, or those claiming under him, shall affect the mortgagee's right of recovery. It has frequently been held that the effect of this clause, whenever it is made a part of or indorsed upon a policy, is to bring the insurer and mortgagee into relations of privity, to convert the mortgagee into a party to the contract of insurance, to give to the mortgagee separate and distinct protection to his interest, to create in him an inter-

est under the policy distinct from that of the property-owner, and to in fact make him an assured. *Hastings* v. *Westchester Fire Ins. Co.*, 73 N. Y. 141; *Magoun* v. *Fireman's Fund Ins. Co.*, 86 Minn. 486; *Hartford Fire Ins. Co.* v. *Olcott*, 97 Ill. 439; *Phenix Fire Ins. Co.* v. *Omaha L. & T. Co.*, 41 Neb. 834; *Ormsby* v. *Phenix Ins. Co.*, 5 S. D. 72; *Syndicate Ins. Co.* v. *Bohn*, 65 Fed. Rep. 165; Clement on Insurance, 33; Elliott on Insurance, § 341. This court has never gone to the full length of these decisions, nor need we do so now. In *Meriden Savings Bank* v. *Home Ins. Co.*, 50 Conn. 396, was presented a case in which the policy had attached to it the " open mortgage clause," but the insurer and mortgagee had entered into a collateral agreement by which, in effect, the provisions of the " union mortgage clause " were made applicable to all policies issued or to be issued by the defendant (the insurer) wherein the loss had been or might be made payable to the plaintiff as mortgagee, or had been or might be assigned to it. The mortgagee brought suit against the insurance company to recover for a loss, the policy being one bearing the appointee indorsement. The first count was on the policy and indorsement alone; the second upon the policy, indorsement and collateral agreement. The defendant demurred to each count. The court, after holding that recovery could not be had upon the first count for want of privity between the parties, decided not only that the agreement created such privity, but also that the mortgagee was thereby " made a party to the contract of insurance." The exigencies of the case required the court to go no further for the overruling of the demurrer to the second count, and so the court said that it would go no further at that time and in that case. It is unnecessary to inquire into the logical consequences of what was then held, since it is quite clear that the plain and explicit provision of the " union mortgage clause," to the effect that the mortgagee's right of recovery under the policy as the payee thereof shall not be affected by the act or neglect of any person other than the mortgagee, his agent, or those claiming under him, must suffice to establish for a

mortgagee under such conditions a status with respect to the insurance which is not only independent of, but also superior to, that of the property-owner. The former's rights are thus expressly set free from the operation of those acts and neglects of the latter which would destroy the latter's insurance or limit the extent of his recovery. The rights of the mortgagee become not merely those of a substitute for the owner. He acquires rights of his own which are subject to no man's control and which give him independent and distinct protection.

It requires no argument to demonstrate that under such circumstances the mortgagee's protection extends, as we have above assumed it to do, to the consequences of all the acts and neglects of the property-owner both before and after loss, and that it therefore precludes a submission to appraisers which should be binding upon the mortgagee without his concurrence or ratification. The plaintiff's claim is dependent upon the proposition that however unlike the essence and character of the two clauses discussed may be, and however much the consequences flowing from the acts and neglects of the insured prior to the occurrence of the loss may differ, according as the one or the other enters into or is indorsed upon the policy, the consequences flowing from acts and neglects subsequent to the loss are the same, regardless of which of the forms is used, so that in either event the mortgagee will not be bound by any adjustment of the loss in which he does not participate or concur. In support of this proposition six cases are cited. These cases are frequently referred to by legal writers and annotators as supporting the principle propounded by the plaintiff and accepted by the trial court. An examination of them, however, discloses that many, if not most, of them have no pertinence whatever to the proposition in support of which they are so often cited, and that the balance are not of such a character as to strongly commend them as authorities in this jurisdiction at least.

In *Hathaway* v. *Orient Ins. Co.*, 134 N. Y. 409, the right of the mortgagee to participate in the adjustment of the loss

was not in question.  Both the policy and loss covered a building mortgaged, and machinery therein not mortgaged save such as had become attached to the realty.  What had become so attached was a matter of dispute between the owner and mortgagee.  The latter's interest, therefore, in the sum to be paid by the insurance company was not only a partial but also an uncertain one.  The company and owner not only adjusted the loss but also made a division of the amount of the adjustment, which was a single gross sum, between the owner and mortgagee without consulting the latter.  This latter attempt at a distribution of what had been determined upon as the amount due from the insurer without the participation therein of one who had a vested right in some part of that amount, while suggestive of fraud and collusion, was also in plain violation of the mortgagee's right, and the court so held.  What it determined was that the insurer " had no authority to agree with the owner as to the amount of the damages, and determine as between him and the mortgagee what sum was payable to each."

In *Wilson* v. *Hakes*, 36 Ill. App. 539, 547, the only question raised related, not to the adjustment, but to the payment, of what was in fact paid.  The contention successfully made was that a mortgagee, with whom the owner and mortgagor has in the mortgage covenanted to maintain insurance sufficient to secure the indebtedness, has such an equitable right to insurance money due by reason of a loss that the insurer after notice cannot pay the owner except at its own risk.

Massachusetts in 1873 adopted a standard form of policy, which embodied as one of its provisions the "union mortgage clause."  Such must have been the policy in the oft-quoted case of *Harrington* v. *Fitchburg M. F. Ins. Co.*, 124 Mass. 126.  That case is not, therefore, authority for the doctrine which is credited to it.

The report of the case of *Hall* v. *Fire Association*, 64 N. H. 405, is so meagre that it is impossible to gather from it with certainty what the terms of the policy in suit were.

A standard policy containing the " union mortgage clause " was adopted by that State prior to June, 1886, and probably in 1885. The case was decided in December, 1887. It is altogether probable, therefore, that the situation there was identical with that in the Massachusetts case.

*Brown* v. *Hartford Ins. Co.*, 5 R. I. 394, 398, was decided upon the proposition that the " open mortgage clause " indorsed upon a policy operated as an assignment of it, by reason of which the mortgagee acquired not only a right of action upon the policy as long as his debt was unpaid, but afterwards. This principle, entirely at variance in its every part with the law of this State, was propounded upon the authority of the Superior Court decision in *Grosvenor* v. *Atlantic Fire Ins. Co.*, 5 Duer, 517, overruled upon appeal, 17 N. Y. 391, and a dictum in *King* v. *State M. F. Ins. Co.*, 7 Cush. 1, 6, which was plainly misinterpreted and thus made to express the reverse of the settled rule in that jurisdiction. *Fogg* v. *Middlesex Mutual Ins. Co.*, 10 Cush. 337 ; *Hale* v. *Mechanics M. F. Ins. Co.*, 6 Gray, 169 ; *Loring* v. *Manufacturers Ins. Co.*, 8 Gray, 28 ; *Franklin Savings Institution* v. *Central M. F. Ins. Co.*, 119 Mass. 240.

There remains the Kentucky case of *Bergman* v. *Commercial Assurance Co.*, 92 Ky. 494, which rests its decision upon the authority of *Brown* v. *Hartford Ins. Co.*, 5 R. I. 394, *Harrington* v. *Fitchburg M. F. Ins. Co.*, 124 Mass. 126, and a text-book reference not in point.

But whatever may be said of the pertinence of these decisions, we are unable to accept the conclusion said to be supported by them. We find it difficult to harmonize the accepted proposition, that a mortgagee by force of the appointment clause in question does not become a party to the insurance contract and is not in privity with the insurer, with the other proposition, that, nevertheless, he acquires the right to intervene between the only parties having contractual relations, and to exercise the functions which are created by the contract to which he is a stranger and which are exercised in pursuance of its provisions. It has been suggested that the explanation is that, upon the

happening of a loss, the mortgagee acquires a vested right. True he does; but what is the right which thus vests? Is it anything more than the right to have the payment made, or his rightful share of it? If more, how and what more, and how does the claimed right to participate in the adjustment under the contract so suddenly arise? It is said that he ought for his own protection to have the right. But contract rights are not thus created. The law does not raise up contract rights and relations for the protection of every man who has failed to protect himself.

But it is unprofitable to pursue this line of enquiry further, without first discovering what provisions there may be in the insurance contract into which the defendant entered, which determines the rights of the parties in the matter under consideration; since it is clear that in so far as the contract speaks, whether it be in the way of defining the extent of the defendant's liability for the loss in the abstract, or of prescribing the manner in which that liability in any given case should be measured, ascertained and reduced to figures, it will be controlling. And it will be no less controlling of the rights of the mortgagee than those of the insurer and owner, since he takes his rights under and subject to the insurance contract. His right to take is limited to the insurer's obligation to pay as determined by the provisions of the policy. Let us, therefore, see how far, if at all, the parties to the contract have themselves determined the questions pertinent to the present issue.

No question arises as to the extent of the defendant's liability abstractly considered. The policy promises indemnity to an amount not exceeding $2,000 for all direct loss or damage by fire, subject, however, to the exceptions named. These exceptions, which include the limitations upon the defendant's liability arising from concurrent insurance and the eighty per cent. clause—concerning the effect of which no question arises—need not be considered. The controversy here relates solely to the means of obtaining an expression in concrete dollars and cents of the obligation whose statement in the abstract all concur in. Upon this subject the policy,

first of all, provides that "the loss or damage shall be ascertained and established" upon a specified basis, and that such ascertainment or estimate shall be made by the insured and the company, or, "if they differ, by appraisers as hereinafter appointed." The subsequent provision for the event of a difference requires the appointment of two appraisers, one by the insurer and the other by the insured, and the selection by the appraisers of an umpire. The award thus obtained is made final as to the amount of the loss. The policy, it will thus be seen, could scarcely be more clear and precise in committing and limiting to the insurer and owner not only the power and right of adjustment by agreement, but also the power and right to submit the adjustment to the final decision of third parties, unless it can be said either that the term "insured" as used in this connection is of itself sufficiently comprehensive to include this mortgagee, or that the right of participation is by some other provision so given, or to be implied, that the term must be construed as including him.

It is easy to understand how a mortgagee, having acquired the status which the "union mortgage clause" gives one, whatever that status, technically regarded, may be, might be fairly entitled to be comprehended within the descriptive term "the insured," and, if not, that the express language of that clause so defines his rights and limits the rights and powers of the property-owner that the right to participate in any adjustment of the loss is impliedly accorded him. On the other hand, it is not easy to discover upon what theory it can be reasonably claimed that a person who has not come into contractual relations with the insurer, who has obtained no insurance protection, and who is only an appointee of the owner as respects whatever may become due under the contract of insurance to which he is a stranger, acquires the right, even by indirection, to assume the title of "the insured." If we look for other provisions which may serve by way of implication or otherwise to give him a standing in the adjustment of a loss, we find only that the word "insured" whenever used in the policy should be

construed to include the legal representatives of the insured, and nothing more. It appears, therefore, that the right to participate in an adjustment of a loss under this policy and indorsement has by the parties to the contract been limited to the insurer, the property-owner, and his legal representatives.

The plaintiff's second objection to the binding force of the award falls with the first. It having been determined that the owner had full power in the matter of adjustment, whether by way of agreement or arbitration, and that the mortgagee was not entitled to be a party thereto, it follows that the former had full power to accept the result of a submission however erroneously arrived at it might have been, and that the latter has no standing to attack it for the cause alleged.

The defendant strenuously complains that it is aggrieved because the court, after setting aside the award as not binding upon these parties and finding that the determination of sound value therein was made upon an erroneous basis which, under the peculiar circumstances of the case, gave too large a result, proceeded to accept the appraisal of the fire damage as correctly representing that item without, as it is said, other evidence upon the subject than the discredited award and the statement of one of the appraisers that he found the damage as stated therein. The contention is that the court thus found an important fact without competent evidence, and unwittingly gave effect to a part of the award which was not only presumptively influenced by the element of sound value, but also based upon the same considerations of cost of construction which entered into the determination of that item, thus unjustly converting a twenty per cent. damage into one of thirty-five per cent. This claim, and others of an incidental character discussed at bar do not, in view of our conclusions above, call for consideration.

The plaintiff was entitled to judgment for the sum of $510.28, the amount of the defendant's liability upon the basis of the award, together with interest on said sum from

the time it was payable to the date of judgment, making in the whole $549.23; and was entitled to no more.

There is error in so much of the judgment as is in excess of $549.23, and it is set aside as to such excess. There is no error in the balance of the judgment, and the judgment is affirmed for said sum of $549.23.

In this opinion the other judges concurred.