No. 33,317

THE DERUY MOTOR COMPANY, *Appellee*, v. INSURANCE COMPANY OF NORTH AMERICA, *Appellant*. (ROBERT BEGANDO, *Defendant*.)

(69 P. 2d 677)

Opinion filed July 10, 1937.

*P. E. Nulton* and *R. L. Letton*, both of Pittsburg, for the appellant.
*Robert S. Lemon*, of Pittsburg, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to recover on a policy of insurance issued to Robert Begando to protect him against the loss of his automobile by fire.

Begando had given plaintiff, the Deruy Motor Company, a chattel mortgage on the automobile to secure an indebtedness of $675.52.

The significant features of the insurance policy of present concern may be summarized thus:

NAME OF INSURER: Insurance Company of North America.
NAME OF INSURED: Robert Begando.
KIND OF CONTRACT: Automobile Policy No. N5W 7112.
DATE OF POLICY: March 12, 1935, to run one year.
PERILS INSURED AGAINST: Fire, etc.

Description of Property Insured: Dodge Coach, 6 cylinders, model 1934, serial number 3695661, cost $873; mortgage lien, $237.20.

"B. Loss Payable Clause: *Subject to all the provisions, exclusions, conditions and warranties contained in this policy, loss, if any, payable, as interest may appear, to Insured and Deruy Motor Co., of Pittsburg, Kan., or assigns.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"Limitation of Liability and
Method of Determining Same:

"This company's liability for loss or damage to the automobile described herein shall not exceed the actual cash value thereof at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated accordingly  .  .  .  such ascertainment or estimate shall be made by the insured and this company  .  .  ."

On August 30 (?), 1935, Begando's automobile was destroyed by fire. On May 19, 1936, pursuant to an agreement with Begando touching the amount of the loss and defandant's liability thereunder, defendant executed its bank draft for $400, payable to Robert Begando and Deruy Motor Company. The draft recited that it was—

"In full settlement of all claims for loss and damage which occurred on the 20th day of August, 1935, to property insured under policy No. N5W 7112."

Begando endorsed this draft and tendered it to the plaintiff motor company, which declined it, and it was deposited with the clerk of the district court of Crawford county in which this lawsuit later originated.

The Deruy Motor Company brought this action against the insurance company for $597, being the alleged amount due it on Begando's note secured by the chattel mortgage on the insured automobile. It set up a copy of the insurance policy as an exhibit attached to its petition. It ignored the obvious discrepancy between the amount of the mortgage, $237.20, as stated in the insurance policy and the amount due as alleged in its petition, and did not ask that the error as to the amount named therein, if it was an error, be corrected by amendment. The petition stated at length the facts we have summarized above and prayed for judgment for the alleged amount of its chattel mortgage, $597.

Defendant's demurrer to this petition was overruled, and it appeals, contending that in strict accordance with the plain and specific terms of the insurance policy it has settled and paid its obligation in full and that the trial court's ruling on the demurrer was erroneous.

As the soundness of this contention is rather apparent, we turn to

appellee's brief to discover, if we may, some logical basis on which the judgment can be sustained.

Appellee's brief opens with an observation that on the legal question of present concern there is a *minority* view which supports the contention of appellant, but that the *weight* of authority supports the ruling of the trial court. Many citations are given, including that of *Lervold v. Republic Mutual Fire Ins. Co.,* 142 Kan. 43, 45 P. 2d 839, where this court said:

"In this state, in accord with the weight of authority, it has been held that the provisions of a mortgage clause attached to a fire insurance policy constitute a contract between the insurance company and the mortgagee. (*Stamey v. Assurance Co.,* 93 Kan. 707, 150 Pac. 227; *Motor Co. v. Indemnity Co.,* 116 Kan. 109, 115, 225 Pac. 1056.)" (p. 46.)

Paraphrasing this language and applying it to the case at bar, the provisions of the mortgage clause in *this* fire insurance policy constitute a contract between this defendant and this plaintiff. What are those provisions which constitute this contract? The pertinent ones are those we have already quoted in this opinion. The loss is not payable to the mortgagee singly, but *to the insured and Deruy Motor Co.,* the plaintiff herein.

Again, what is the provision of this insurance policy which "the weight of authority" declares to constitute a contract between the defendant insurance company and the plaintiff mortgagee whereby the amount of the loss is to be ascertained? This policy (which constitutes a contract between plaintiff and defendant, according to the majority view) provides that the amount of the loss is to be ascertained "by the insured [Begando] and this [defendant] company." In the Stamey case cited in the quotation from our recent Lervold case, the policy contained a provision, "Loss, if any, is payable to the . . . [mortgagee] as their interest may appear." It needs no multiplicity of words to demonstrate that the Stamey case supplies no rule of law to be followed in the case at bar. The case of *Motor Co. v. Indemnity Co.,* 116 Kan. 109, 225 Pac. 1056, is instructive, but it tends to support the appellant's position in this case, particularly where it declares that in the absence of some provision in the policy or mortgage clause creating a different relation, the mortgagee's rights depend upon the rights of the insured.

Looking into some of the cases from other jurisdictions cited by appellee, it was held in *Hall v. Association,* 64 N. H. 405, 13 Atl. 648, that—

"A mortgagee to whom a policy of fire insurance is made payable in case of loss is not bound by an adjustment of a loss made without his knowledge or consent by the mortgagor with the insurance company."

The same ruling was made in *Harrington v. Fitchburg Insurance Co.*, 124 Mass. 126; also in *Hathaway v. O. Ins. Co.*, 134 N. Y. 409, 32 N. E. 40; but in none of those cases was there a provision that the loss was to be ascertained by the insured and the insurer, such as was explicitly stated in the policy sued on in this action. The case of *Insurance Co. v. Stein*, 72 Miss. 943, 18 So. 414, does lend some support to appellee's position. In that case it is inferable that the policy provided that in case of loss an appraisement thereof was to be made by persons selected by the insurer and insured. The court held that such a provision was not binding on a mortgagee, to whom, by the terms of the policy, the loss was payable. "His rights, as against the company, become fixed upon the loss, and he, instead of the insured, is the real party in interest"; and that his rights "were not to be diminished or destroyed by his debtor's subsequent action." This is respectable authority, but the case is distinguishable on one ground, at least. In our case the loss was not payable to the mortgagee, but payable to both mortgagor and mortgagee, the manifest purpose of such a provision being that the insurer was determined not to be involved in any controversy between mortgagor and mortgagee touching the payment of the insurance money if a loss should occur. It is not suggested that such a feature of an insurance policy is against public policy, and we think the defendant was in the clear when it settled the loss and paid in accordance with its contract.

In *Chandos and another v. American Fire Ins. Co. of Philadelphia*, 84 Wis. 184, 54 N. W. 390, the insurance policy contained a provision which read:

" 'The amount of sound value and of damage to the property may be determined by mutual agreement between the company and the assured; or, if they fail to agree, the same shall then, at the written request of either party, be ascertained by an appraisal of each article of personal property, or by an estimate in detail if a building, by competent and impartial appraisers, one to be selected by each party, and the two so chosen shall first select an umpire to act with them in case of their disagreement, and if the said appraisers fail to agree, they shall refer their differences to such umpire; and the award of any two in writing, under oath, shall be binding and conclusive as to the amount of such loss or damage.' " (p. 188.)

The assured and the company could not agree on the amount of the loss, and appraisers were chosen in accordance with the pro-

visions quoted above, and they made their appraisement and award. A mortgagee of the property was not a party to the appraisement and had no notice of it. He objected to the award, but the court held that under the specific terms of the policy the assured and the insurer had the right to enter into the appraisement, without notice to the mortgagee and without his approval, and that he was bound by the award. To like effect was *Brewing Co. v. Insurance Co.*, 81 Ohio St. 1, 89 N. E. 1065.

In *Collinsville Savings Society v. Boston Ins. Co.*, 77 Conn. 676, 60 Atl. 647, the insurance policy provided for the appointment of two appraisers and an umpire if a loss occurred. A fire occurred; appraisers and umpire were appointed and discharged their functions. The mortgagee objected to the award and sued for the alleged amount of the loss. The court held:

"The insertion, in a Connecticut standard policy of fire insurance, of the 'open mortgage clause,' whereby the loss, if any, becomes payable to a specified mortgagee as his mortgage interest may appear—does not make him a party to the contract nor entitle him to participate in an adjustment of the loss by appraisers, to whom it has been submitted by the property owner and insurer pursuant to the terms of the policy. Under such circumstances the sum awarded by the appraisers and accepted by the owner, even if calculated upon an erroneous basis. is obligatory upon the mortgagee without regard to his concurrence or ratification."

In discussing the case just cited the learned court supplies a keynote which may explain the divergent views on the question at bar. The controlling factor is to be found in the terms of the insurance contract. They govern; and they may not be waved aside. Those contained in the contract sued on in this action bound the parties concerned. They bound the mortgagee. It had no rights independent of the mortgagor. (Anno.—Insurance—Mortgage Clause, 19 A. L. R. 1449 *et seq.*)

The case of *Orenstein et al. v. New Jersey Ins. Co.*, 131 S. C. 500, 127 S. E. 570, is particularly instructive. One Orenstein had a stock of merchandise. He owed a bank $2,232.47. He procured a policy of fire insurance for $2,500 from defendant and put it up with the bank as collateral security. The policy contained a "short form of loss payable clause" which provided that any loss should be payable to the bank as its interests might appear. The policy also provided that in case of loss, and disagreement between insured and insurer, such loss and damage was to be fixed by arbitrators and an umpire selected under the terms of the policy. A fire loss occurred. The

loss and damage was ascertained by arbitrators chosen as the policy prescribed. Their estimate of the loss was fixed at $862.80.

In the opinion the court discussed the so-called "union mortgage clause," and the "simple loss payable clause," and cited and analyzed the familiar cases, some of which we have mentioned in this opinion, and held:

"Under simple or short form of loss payable clause, mortgagee is bound by appraisal performed under terms and conditions of policy, especially when loss payable clause is made subject to provisions of policy.

"Where fire policy provides method of determining amount of loss, such provisions are binding on parties thereto, and holder of policy, as collateral security or under assignment from insured, has no higher rights than were vested in insured." (Syl. ¶¶ 5, 8.)

Included in its opinion is a paragraph from Joyce on Insurance, so pertinent that we repeat it here:

"So where a policy insuring premises against loss by fire and having a mortgage clause attached, provides that in the event of a loss and a disagreement as to the amount thereof, there shall be an appraisal fixing such amount, the appraisers to be chosen by the insurer and the insured, such provision is binding on the mortgagee and he is bound by the appraisal, though he did not participate in the appointment of the appraisers or had no notice of the appraisement or of the proceedings resulting therein. And a 'mortgage clause' attached to a policy at the time of execution, which makes the loss, if any, under the policy, payable to the mortgagee as his interest may appear, is not an assignment of the policy to the mortgagee, and, in the absence of fraud or collusion, he is bound by the award of appraisers provided for and required by the terms of the policy in the event of a disagreement between the insured and the insurance company as to the amount of the loss, although the mortgagee was not a party to, and had no notice of, the appraisement and award." (5 Joyce, Law of Insurance, 2d ed., § 3249.)

See, also, 26 C. J. 273; 14 R. C. L. 1084; and note to *Motor Co. v. Indemnity Co.*, 116 Kan. 109, 225 Pac. 1056, in 38 A. L. R. 367 *et seq.*

The judgment is reversed and the cause remanded with instructions to enter judgment for defendant.