**A. Judson Alton and First State Bank & Trust Company of Canton, Illinois, Appellee, v. The American Insurance Company of Newark, New Jersey et al., Appellants.**

**Gen. No. 8,462.**

Heard in this court at the October term, 1930.
Opinion filed January 26, 1931.

BURNETT M. CHIPERFIELD and ROBERT B. CHIPER-FIELD, for appellants.

A. E. TAFF and F. F. PUTMAN, for appellees.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

A. Judson Alton and First State Bank & Trust Company of Canton, Illinois, appellees, filed their bill in chancery to compel the American Insurance Co. of Newark, New Jersey, one of the appellants, to pay the amount named in a fire insurance policy to them as their interests might appear. The cause was referred to the master in chancery whose report recommended that the bill be dismissed for want of equity. The objections of appellees to the master's report were ordered to stand as exceptions thereto in the circuit court and upon a hearing of the same the exceptions were sustained and a decree entered by the chancellor ordering that the amount named in the policy be paid to the First State Bank & Trust Company of Canton. Before the hearing, a supplemental bill was filed setting out the death of the defendant George Melvin, the appointment of the defendant Eva L. Melvin, his

wife, as the administratrix of his estate and making her, as such administratrix, party defendant to the bill.

It is alleged in the bill, in substance, that prior to the 21st day of February, 1923, A. Judson Alton was the owner in fee simple of certain real estate on which was a one-story, frame dwelling house; that on said day mentioned, Alton, together with his wife, executed a deed of trust to the First State Bank & Trust Company to secure payment of a promissory note in the principal sum of $9,000, due five years after date with interest at six per cent, payable annually; that by said trust deed the dwelling house was to be kept insured against loss by fire for the benefit of the holder of the trust deed as its interest might appear, and Alton, in compliance with said provision, insured the dwelling house in the American Insurance Company of Newark, New Jersey, which insurance was in full force up to February 18, 1924; that on the 21st day of February, 1923, Alton entered into an agreement for the sale of said premises with George Melvin and Eva L. Melvin, his wife; that by said agreement Melvin agreed to renew any and all insurance then on said premises and to keep all buildings insured against loss by fire for the benefit of said Alton as his interest might appear; that Melvin entered into possession of the premises on the 21st day of February, 1923, and so continued until about March 1, 1927; that on February 18, 1924, Melvin in compliance with his agreement to Alton aforesaid made his application with the Insurance Company for insurance on the dwelling house and on the same day the Insurance Company executed its policy of insurance against fire in the sum of $1,700; that Melvin paid the premium and that said policy was to remain in force until February 18, 1927; that the Insurance Company was fully acquainted with the extent and condition of the title and interest of George

Melvin in said premises at the time of the application for and the delivery of said contract of insurance and had full knowledge of the interest of the complainants and knew under the terms of said trust deed that Melvin, as vendee of said premises, was required and obliged to insure the improvements on said premises for the benefit of the First State Bank & Trust Company as its interest might appear; that wholly disregarding such knowledge it negligently omitted to provide in said policy that loss, if any, should be payable to the complainants as their interest might appear; but on the contrary the Insurance Company executed a memorandum, called a rider, on said contract of insurance as follows:

"It is hereby understood and agreed that the title of the assured to the above described property is under and by virtue of contract for deed from First State Bank & Trust Co., and loss, if any, hereunder is made payable to the assured and the said First State Bank & Trust Co., as their respective interests may appear."

It is also alleged in the bill that the Insurance Company by said rider recited that the title of Melvin to said premises was by virtue of a contract for deed from the First State Bank & Trust Company when it well knew that the title to said premises was under a contract for deed from said Alton and that the loss, if any, should have been, by said rider, payable to Melvin, Alton and the First State Bank & Trust Company as their respective rights and interests might appear; that the application, policy, rider and all other instruments connected with or required concerning the issuance of said policy and contract of insurance and rider attached thereto were each wholly prepared by the Insurance Company; that while said contract of insurance was in full force on February 14, 1927 the dwelling house aforesaid was totally destroyed by fire;

that the Insurance Company had notice of loss within 15 days thereafter and full compliance with all the requirements of the terms of said policy had been made; that the value of said dwelling house was greater than the amount of the insurance thereon; that complainants have an equitable lien on the proceeds of said policy and the Insurance Company became liable to pay to Alton and the First State Bank & Trust Company the said sum of $1,700 together with interest; that complainants have made repeated demands for such payment which have been refused; that it may be decreed by the court that the policy of insurance was issued, contracted for and taken out for the use and benefit of complainants; that they have a lien on the proceeds of said policy; that the Insurance Company be required to pay the proceeds of said policy to complainants as their respective interests may be determined; that the rights and interests of complainants and defendants may be definitely fixed and ascertained, etc.

The policy is attached to and made a part of the bill of complaint and it is provided therein that the application therefor shall be made a part thereof but the application is not set out in the bill nor made a part of the same.

The answer of the Insurance Company admits the execution of the application and the policy and its rider but denies substantially all other allegations in the bill and avers affirmatively that no proofs of loss were made as required by the terms of the policy and said policy became therefore void.

The proofs show that in the application the following question and answer thereto appear:

"Is there any other party interested in the property or real estate on which the same is situated? 1st State Bank & T. Co."

The following clause also appears in the application:

"Loss, if any, on buildings, payable to First State Bank & Trust Co., mortgagee, of Canton P. O. State of Illinois as interest may appear, subject, however, to terms and conditions of policy."

The rider in the policy is as follows:

"It is hereby understood and agreed that the title of the assured to the above described property is under and by virtue of contract for deed from First State & Trust Co., and loss, if any, hereunder is made payable to the assured and the said First State Bank & Trust Co., as their respective interests may appear."

The proofs show that the assertion in the rider that the title of the assured was by virtue of a contract for deed from the First State Bank & Trust Company was erroneous as the title was by virtue of a contract for deed from Alton but in our view this error was immaterial and has no bearing upon the merits of the case.

It is conceded that as a general proposition under a policy of insurance requiring a proof of loss no recovery can be had unless such proofs are furnished pursuant to the conditions of the policy, but the contention of appellees is that in the absence of an express provision in the policy a mortgagee or vendor of the assured to whom the loss is made payable is not required to make proof of loss as a condition precedent to recovery. It is conceded by appellants that a "loss payable" clause in a policy under such circumstances may be so worded as to support the above contention made by appellees but that under the application which is made a part of the policy and the terms of the particular policy in this case including the rider or "loss payable" clause the mortgagee and vendee became simply appointees of the insured to receive the proceeds of the policy to the extent of their respective

interests and to place their respective indemnities at the risk of every act and omission of the mortgagor or assured that would avoid, terminate or affect the insurance of the latter's interest under the terms of the policy.

In support of their theory appellees have cited three cases: *Queen Ins. Co. v. Dearborn Savings, Loan and Building Ass'n*, 175 Ill. 115; *Northern Assurance Co. v. Chicago Mutual B. and L. Ass'n*, 98 Ill. App. 152; *Oakland Home Ins. Co. v. Bank of Commerce of Grand Island*, 47 Neb. 717. In the first case cited by appellees the fire insurance policy was issued by the appellant to one Graham to which was attached a slip or rider commonly known as the "New York standard Mortgagee clause" making the loss payable to the appellee as its interest might appear. In the policy itself was the following provision:

"If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee, . . . the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended thereto." One of the defenses in this case was that the proof of loss was not made within sixty days. The court there held: "That there existed between the appellant insurance company and the appellee, the mortgagee of the insured property, a contract of insurance distinct from that which existed between the company and the owner is not and cannot be questioned. . . . The question is, what are the terms of that contract? Manifestly, the loss clause alone would not be sufficient to constitute such a contract. It is not sufficiently complete to be given that effect. Do all the terms and conditions imposed on the owner in his contract apply also to the mortgagee's contract? The answer must be found in the stipulations, construed in the light of

the surrounding circumstances.'' The court then cites the clause last above quoted and proceeds: ''The meaning of this clause is, as we understand it, that in case a mortgagee clause is added, the contract with the mortgagee shall include only such conditions as appear in such mortgagee clause or slip. The language of the policy, particularly in determining whether the liability is limited, is always to be strictly construed against the insurer. . . . Under the well known rule of construction, '*Expressio unius est exclusio alterius,*' the statement in this clause that certain conditions shall apply, but only as set forth in the mortgagee slip, excludes all conditions not contained therein. The mortgagee slip in this case contains no such conditions as are claimed by the defendant. Had it been desired to impose the obligation on the mortgagee to make proof of loss, that requirement should have been inserted in the conditions applicable to the mortgagee.''

In the policy under consideration in the case at bar there is no provision that if an interest under the policy shall exist in favor of a mortgagee the conditions contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended thereto. In the case cited the court holds in substance that none of the provisions of the policy shall apply where the policy is for the benefit of a mortgagee except such as are specifically mentioned in the clause providing for the same and thus excludes the necessity of the insured making any proofs of loss. The court does state specifically that the loss clause alone would not be sufficient to constitute such a contract.

In the second case cited by appellees the policy contained the same clause as in the first case cited and in addition thereto contained a clause to the effect that it was understood and agreed that the insurance

as to the interest of the mortgagee or vendee only therein should *not* be invalidated by any act or neglect of the *mortgagor or owner of the property insured.*

In the Nebraska case cited the "loss payable" clause in the policy under consideration was substantially the same clause as appears in the other two cases. The decision in each of these three cases is based solely upon the provision of the policy involved therein that no conditions of the respective policy should apply to the "loss payable" clause except such as were contained in said clause and are not applicable to the facts as shown in the case at bar.

One of the earliest cases in this State in which the question here involved was discussed is that of the *Illinois Mut. Fire Ins. Co. v. Fix,* 53 Ill. 151. The issue involved in the case as stated by the court was as follows:

"The appellee, Fix, being indebted to Mayer, for whose use this suit is brought, executed to him his notes, secured by mortgage on a brewery, and at the same time assigned to him a policy of insurance, issued by the appellants, upon the building and fixtures. This assignment was made with the consent of the company indorsed upon the policy. The present suit was brought in the name of Fix for the use of Mayer, and resulted in a verdict and judgment for the plaintiff, from which the company appealed.

"On the trial, the company offered to prove that the building was set on fire by the plaintiff, Fix. The evidence was objected to by plaintiff's counsel, and the objection was sustained. This ruling presents the main question in the case, to wit, whether, where a policy of insurance has been assigned by the assured to one holding a mortgage on the premises, with the consent of the company indorsed upon the policy, its validity can be destroyed by acts done by the assignor in violation of its conditions."

After a very full discussion of the early authorities the court concluded as follows:

"It is, in our opinion, very clear, if we attempt to dispose of cases of this character on the theory that the assignment is to be treated as a new policy, issued directly to the mortgagee, for his exclusive benefit, and to adjust the rights of these parties in accordance with what we may suppose such a policy would contain, we shall be wandering in a labyrinth where there would be but one thing certain, and that is, that great injustice would be done these companies. We should practically be enforcing liabilities against them which they never intended to incur, and giving to the mortgagor the benefit of a policy in which he has forfeited all his rights.

"We deem it safer and more just to say, that where a policy is assigned as collateral to a mortgage, though with the consent of the company, the assignee takes it subject to the conditions expressed upon its face, or necessarily inhering in it, and that no recovery can be had merely in consequence of the equities of the assignee, if the assignor has lost the right to recover by violating the terms of the contract.

"The evidence, offered to show that the plaintiff set the building on fire, should have been admitted, and the instruction asked for defendants, in regard to the effect of a second insurance, should have been given."

In the case of *Home Mut. Fire Ins. Co. of Chicago v. Hauslein*, 60 Ill. 521, the insured assigned his policy to his mortgagee with the consent of the Insurance Company. Subsequently he conveyed the property to other persons contrary to the terms of the policy. The court held:

"It has been fully settled by this court, that the assignee of a policy takes it subject to the conditions expressed upon its face; and his equities confer no right, if the assignor has lost all right of recovery by

a violation of any of the terms or conditions of the policy.''

In the case of *Continental Ins. Co. v. Hulman & Cox*, 92 Ill. 145, the policy contained this provision:

"Loss, if any, payable to Messrs. Hulman & Cox, of Terre Haute, Indiana, mortgagees, as interest may appear."

The policy also contained a provision that if the insured shall thereafter make any other contract of insurance on the property without the consent of the company then the policy shall become void. It appeared from the evidence that the assured did obtain other policies of insurance on the property in violation of the above provision. The court held:

"Making the 'loss, if any, payable to Hulman & Cox, mortgagees,' was not an insurance of their mortgage interest in the property. As said in Flanders on Fire Insurance, p. 441, 'It is merely a designation of the person to whom it is to be paid, and is not an assignment of the policy. Hence it is the damage sustained by the party insured, and not by the party appointed to receive payment, that is recoverable from the insurers. The insurance being upon the interest of the insured, if he parts with that interest before the fire, no loss is sustained by him, and of course none is recoverable by his assignee or appointee. In other words, a policy made "payable to A in case of loss" is an agreement on the part of the insurers that "A" shall recover whatever the person originally insured may be entitled to recover in case of loss; that is, it is a contingent order or assignment of what may become due under the contract, and not an absolute transfer by virtue of which the assignee acquires the full rights of an assignee of a chose in action.' In *Franklin Savings Institution v. Central Mutual Fire Insurance Co.*, 119 Mass. 240, upon this subject, the court say: 'The plaintiffs held a mortgage of the property, and

on the day after the policy was issued, an indorsement was made upon it that it was to be payable, in case of loss or damage, to them "as their mortgage claim may appear." It has been repeatedly held by this court that such an indorsement does not operate as an assignment of the policy, nor as a contract to insure the interest of the mortgagees, but that they can claim only what the party originally insured is entitled to recover under his contract. *Fogg v. Middlesex Mut. Ins. Co.*, 10 Cush 337; *Hale v. Mechanics' Mut. Ins. Co.*, 6 Gray 169; *Loring v. Manufacturers' Ins. Co.*, 8 Gray 28.' "

In the case of *American Central Ins. Co. v. Birds Building and Loan Ass'n*, 81 Ill. App. 258, the policy contained the provision: "Loss, if any, payable to the Birds Building & Loan Association, as its interest may appear." One of the defenses was that no proofs of loss had been made in accordance with the terms of the policy and another one was that the assured subsequently mortgaged the property to other individuals contrary to the terms of the policy. The court held: "The fact that the loss was made payable to appellee as its interest might appear, did not prevent a breach of condition of the policy from making it void as to appellee."

In *Clark v. Trainor*, 237 Ill. App. 269, the policy contained the provision that as to the interest of the mortgagee it should not be invalidated by any act or neglect of the mortgagor or owner of the property. The court held:

"If in the case under consideration the clause attached had provided, 'loss, if any, payable to E. C. Stokburger, trustee, as his interests may appear,' there would have been no liability on the part of appellee insurance company, but owing to the clause providing that as to the mortgagee of trustee said policy should not be avoided by the various acts of the insured, there exists a liability on the part of the company, subject

only to the terms of said mortgage clause including the right of subrogation to the security held by said trustee or mortgagee.''

The case of *Queen Ins. Co. v. Dearborn S. L. & B. Ass'n, supra,* approves the same doctrine we have already mentioned. In the case of *Orenstein v. Star Ins. Co.,* 10 Fed. (2d) 754, 757, in discussing a similar clause in an insurance policy the court said:

''It was a mere open loss payable clause, the effect of which was to make the mortgagee the simple appointee of the insured to receive the proceeds of the policy to the extent of his interest, and 'to place his indemnity at the risk of every act and omission of the mortgagor that would avoid, terminate, or affect the insurance of the latter's interest under the terms of the policy.' *Del. Ins. Co. v. Greer, supra; Brecht v. Law, Union & Crown Ins. Co.* (C. C. A., 9th Ct.) 160 F. 399, 87 C. C. A. 351, 18 L. R. A. (N. S.) 197; *Orenstein v. New Jersey Ins. Co.,* 127 S. E. 570, 131 S. C. 498; *Collinsville Savings Society v. Boston Ins. Co.,* 60 App. 647, 77 Conn. 676, 69 L. R. A. 924; *Hill v. International Indemnity Co.,* 225 P. 1056, 116 Kan. 109, 38 A. L. R. 362; *Hanson v. National Liberty Fire Ins. Co.,* (N. J. Sup.), 126 App. 453; 14 R. C. L. 1084; note of Judge Freeman, 58 Am. St. Rep. 671, *et seq.* The rule is tersely stated by the New Jersey Supreme Court, in the *Hanson* case, *supra:* 'The law is settled . . . that a mortgagee cannot recover if the owner could not.' ''

The remarks made by the court in the case of *Syndicate Ins. Co. v. Bohn,* 65 Fed. 165, 173, are pertinent to the question here involved:

''We all know that 20 years ago a contract between a mortgagee and an insurance company, like that before us, was novel and rare. At that time the customary method of indemnifying the mortgagee against loss by fire was to indorse upon the policy the words, 'Loss, if any, payable to ———, mortgagee, as his

interest may appear,' or words of similar import. To-day such an indorsement is rare, and a contract similar to the mortgage clause before us is in general use. Why this change? The reason is not far to seek. The old indorsement made the mortgagee a simple appointee of the mortgagor, and put his indemnity at the risk of every act or neglect of the mortgagor that would avoid the original policy in his hands. *Baldwin v. Insurance Co.,* 60 N. H. 164; *Martin v. Insurance Co.,* 38 N. J. Law 140; *Insurance Co. v. Maackens,* 38 N. J. Law 564. Indemnity so precarious, so liable to be destroyed by the ignorance, carelessness, or fraud of the mortgagors, was not satisfactory to the mortgagees; and they proceeded to make contracts with the insurance companies similar to that before us, for the purpose of securing *indemnity* to their interests that should not be affected by any act or negligence of the mortgagors.''

In the case of *Delaware Ins. Co. of Philadelphia v. Greer,* 120 Fed. 916, the clause in the policy was in the following words: ''Loss, if any, payable to James H. Truskett, mortgagee, as his interest may appear.'' ''Loss, if any, under this policy, payable to Greer Mills Live Stock Commission Company, as their interest may appear, subject to a prior mortgage held by James H. Truskett.'' The court held:

''But the clause which these parties selected and attached to the policy had a known, definite, and adjudicated meaning; it had a settled legal effect when they chose and appended it to the contract—the meaning and effect that the indemnity thereby secured to the mortgagees was subject to the risk of every act and neglect of the mortgagor which would avoid the original policy in his hands. No form of words could have been devised or adopted, relating to the insurance of these mortgagees, which would so clearly and conclusively have expressed the intention of the parties to this contract to subject the indemnity secured

by the mortgagees to the risk of the acts and omissions of the mortgagor, as the clause which they selected and attached to the policy, because a long line of adjudications, covering more than 40 years, had established the fact that this was its true meaning and effect. *Grosvenor v. Atlantic Fire Ins. Co.*, 17 N. Y. 391, 393; *Bates v. Equitable Ins. Co.*, 10 Wall. 33, 36, 19 L. Ed. 882; *Smith v. Union Ins. Co.*, 120 Mass. 90, 91; *Baldwin v. Ins. Co.*, 60 N. H. 164, 166; *Martin v. Ins. Co.*, 38 N. J. Law 140, 142, 20 Am. Rep. 372; *State Ins. Co. v. Maackens*, 38 N. J. Law 564; *Loring v. Manufacturers' Ins. Co.*, 8 Gray 28; *Savings Inst. v. Central Ins. Co.*, 119 Mass. 240; *Brunswick Savings Inst. v. Com. Union Ins. Co.*, 68 Me. 313, 28 Am. Rep. 56; *Bank v. Amazon Ins. Co.*, 125 Mass. 431. The true construction of the clause 'Loss, if any, payable to ————, mortgagee, as his interest may appear,' or of words of similar import, when attached to policies of fire insurance, is, and has been for more than 40 years, that the mortgagee is thereby made the simple appointee of the mortgagor, and that his indemnity is at the risk of the acts and omissions of the latter which would avoid, terminate, or affect the mortgagor's insurance under the original policy.''

And in *Brecht v. Law, Union & Crown Ins. Co.*, 160 Fed. 399, 403, the court said:

''Now, if it had been the intention of the defendant to insure the plaintiff in error absolutely and without reference to any breach of the conditions of the policies by the St. Johns Lumber Company, such insurance could have been effected by the use of the 'union mortgage clause' in defining the rights of the plaintiff in error under the policies; but, instead of doing this, the parties adopted a form merely designating him as the person to whom the loss, if any, should be payable, a form which, under well-settled rules, subjects the appointee to the risk of all acts and omissions of the person to whom the policy was issued.''

A great many more cases, both State and Federal, might be cited upholding the same construction of such a clause as appears in the case at bar, and counsel for appellees have cited none in their brief which hold to the contrary and our attention has not been called to any holding otherwise except some of the very early New York cases which were subsequently overruled.

Appellees could have protected their interests by having had inserted in the policy the clause known as the "union mortgage clause" in common use in such policies but they were content to accept that form which placed them at the mercy of all the defaults of the insured. While the courts of this State, where ambiguity exists in insurance policies, have been liberal in their constructions in favor of the insured where possible, yet they cannot make new contracts between the parties and overrule legal principles which have been established for many years.

Appellees now contend that appellants waived proofs of loss. No such contention was made in the bill of complaint but on the contrary the allegations therein were that appellees had performed all the conditions of the policy. The point was not raised before the master in chancery who heard the proofs nor before the chancellor in the court below and cannot for the first time be raised in this court. The main defense set up in the answer was that no recovery could be had because no proofs of loss were made in accordance with the provisions of the policy. The bill was not amended to meet this defense and if it had been, in our opinion, it would not have been sustained by the proofs.

The decree of the circuit court is reversed and remanded with directions to dismiss the bill for want of equity.

*Reversed and remanded with directions.*